# THE UNITED STATES LIFE INSURANCE COMPANY

*v.*

## MAMIE E. ROSS.

*Filed at Ottawa January 20, 1896.*

.1. EVIDENCE—*circular of insurance company as to days of grace.* A circular slip issued and put in circulation by an insurance company, stating that certain grace is allowed upon all its policies, is admissible in evidence against it to show waiver, as against a forfeiture of a policy, for non-payment of a premium at the time specified.

2. INSURANCE—*when company is estopped by slip as to days of grace.* An insurance company which circulates among its patrons a slip stating that ten days' grace will be allowed upon all its policies for payment of premium and thirty days' grace upon all tontine policies, is estopped to say that a policy is only a *limited* tontine or *special* tontine, not entitled to the longer term of grace.

3. SAME—*when conditional waiver of forfeiture is held to be general.* Where waiver of a forfeiture by an insurance company is conditional, it should be held general, and estop the company from afterward setting it up except upon notice of forfeiture before the loss, unless it is clearly proved that the condition was definitely understood by the insured.

4. SAME—*waiver of time of payment of premium—how far available.* A waiver of the time for payment of premiums by an insurance company for a specified time is available to the insured only when payment was made or loss occurred within such time.

5. SAME—*how company may avail itself of forfeiture.* An insurer is not required to formally declare a forfeiture for non-payment of premium under a condition of the policy that upon failure to pay the premium when due the contract shall become null and void, but may set up the forfeiture by way of defense when sued for the loss.

6. FORFEITURES—*not enforced unless definitely contracted for.* Forfeitures are not enforced except when definitely contracted for, and nothing done by the party for whose benefit they are made to mislead the other to his injury.

*United States Life Ins. Co.* v. *Ross,* 57 Ill. App. 98, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JAMES GOGGIN, Judge, presiding.

This is a suit by appellee, against appellant, on a policy of insurance on the life of her husband, Robert J. Ross, in the sum of $5000, for her benefit.  She recovered a judgment in the Superior Court of Cook county for the amount of the policy, interest and costs of suit.  On appeal that judgment was affirmed by the Appellate Court, and the company again appeals.

The policy was issued February 17, 1888.  By its terms the premium was payable in semi-annual installments of $54.75 each, due on the 17th days of February and August in every year, with the condition, "and in case any premium or payment required or agreed to be made, now or hereafter, in connection with this insurance, shall not be so paid when due, then this contract shall become null and void and of no effect."  The premium falling due on February 17, 1889, was not paid, and Robert J. Ross died on the 7th day of the following month.  There was no declaration of a forfeiture of the policy by the company prior to the bringing of this suit.

ISHAM, LINCOLN & BEALE, for appellant:

In the absence of waiver or estoppel the forfeiture clause is self-operating, and calls for no action on the part of the insurance company.   Cook on Life Insurance, sec. 94; 2 May on Insurance, sec. 352; *Insurance Co.* v. *Garland*, 108 Ill. 220; *Schimp* v. *Insurance Co.* 124 id. 354; *Carlock* v. *Insurance Co.* 138 id. 210; *Hansen* v. *Knights of Honor*, 140 id. 301; *Traveling Men's Ass.* v. *Schauss*, 148 id. 304; *Rood* v. *Railway Conductors' Benefit Ass.* 31 Fed. Rep. 62; *Railway Conductors' Benefit Ass.* v. *Loomis*, 43 Ill. App. 599; *Insurance Co.* v. *Watson*, 23 Mich. 486; *McIntyre* v. *Insurance Co.* 52 id. 188; *Insurance Co.* v. *McMillen*, 24 Ohio St. 67; *Ashbrook* v. *Insurance Co.* 94 Mo. 72; *Catoir* v. *Insurance Co.* 33 N. J. 487; *Holly* v. *Insurance Co.* 105 N. Y. 437; *Fowler* v. *Insurance Co.* 116 id. 389; *Insurance Co.* v. *Statham*, 93 U. S. 24; *Thompson* v. *Insurance Co.* 104 id. 252; *Benevolent Society* v. *Baldwin*, 86 Ill. 479.

Punctuality in the payment of premiums in the case of a life insurance policy is of the very essence of the contract. *Insurance Co.* v. *Statham*, 93 U. S. 24; *Thompson* v. *Insurance Co.* 104 id. 252; *Holly* v. *Insurance Co.* 105 N. Y. 437; *Fowler* v. *Insurance Co.* 116 id. 389; *Walker* v. *Tucker*, 70 Ill. 532; 2 Parsons on Contracts, 500.

The restoration of a lapsed life insurance policy by subsequent payment of the premium is analogous to the case of a fire policy which is held to be suspended if the insured premises are allowed to become vacant, but to be restored to full force upon the re-occupation of the premises. *Schmidt* v. *Insurance Co.* 41 Ill. 295; *Insurance Co.* v. *Garland*, 108 id. 220.

G. Frank White, for appellee :

A declaration of forfeiture must be made in the lifetime of the assured. *Insurance Co.* v. *Anderson*, 77 Ill. 384; *Insurance Co.* v. *Palmer*, 81 id. 88.

A provision for forfeiture will be strictly construed, so as to prevent a forfeiture, if possible. *Traveling Men's Ass.* v. *Schauss*, 148 Ill. 304.

A forfeiture is a matter of strict legal right, and in order to assert it the company must abide inflexibly by the terms of its contract. *Insurance Co.* v. *Robertson*, 59 Ill. 123 ; *Accident Ass.* v. *Windover*, 137 id. 417.

An insurance company wrote to the insured that the premium would fall due on a certain date, and asked if he wished to remit amount by return mail. It was held this showed no forfeiture up to that time, and was a waiver of forfeiture. *Insurance Co.* v. *Warner*, 80 Ill. 410.

It is not necessary to a valid waiver, after acceptance of the policy, that it should be in writing. The time can be extended by parol, or after expiration of the days of grace the right to treat the contract as forfeited can be waived. *Insurance Co.* v. *Stanton*, 57 Ill. 354; *Insurance Co.* v. *Jones*, 62 id. 458; *Insurance Co.* v. *Garland*, 108 id. 220 ; *Insurance Co.* v. *Cary*, 83 id. 453 ; *Insurance Co.* v. *Johnston*, 42

Ill. App. 66; *Insurance Co.* v. *Klewer*, 129 Ill. 599; *Insurance Co.* v. *Warner*, 80 id. 410.

A waiver of a strict compliance with the conditions of the policy continues it in force. *Insurance Co.* v. *Robertson*, 59 Ill. 123; *Insurance Co.* v. *Hart*, 149 id. 513; *Insurance Co.* v. *Barringer*, 73 id. 230.

A policy of insurance does not become void on a breach of condition, as the company may waive any restriction made for its benefit. *Insurance Co.* v. *Cary*, 83 Ill. 453; *Insurance Co.* v. *Johnston*, 143 id. 106.

No intendment will be indulged in favor of a forfeiture. *Insurance Co.* v. *Strong*, 137 Ill. 646.

An insurance company may permit its agents to waive a forfeiture, notwithstanding the clause relating thereto. *Insurance Co.* v. *Keach*, 32 Ill. App. 427; *Insurance Co.* v. *Maguire*, 51 Ill. 342; *Insurance Co.* v. *Koch*, 134 id. 583; *Insurance Co.* v. *Holzgrafe*, 53 id. 516.

A condition in a policy that it shall be void if the annual premium is not paid on or before a specified time, being for the benefit of the company, may be waived. The policy will not become void for non-payment, and may be enforced. *Insurance Co.* v. *Warner*, 80 Ill. 410.

If the practice of an insurance company with the insured and others has been such as to induce the belief that such part of the policy as applies to forfeiture will not be insisted upon in a certain event, the company will not be allowed to set up such forfeiture. *Insurance Co.* v. *Nelson*, 65 Ill. 415; *Insurance Co.* v. *Pierce*, 75 id. 426; *Insurance Co.* v. *Warner*, 80 id. 410.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is alleged by the plaintiff in her declaration, and was contended on her behalf at the trial, that the payment of the installment of the premium maturing February 17, 1889, according to the terms and conditions of the policy was waived by the defendant. The denial of this contention forms the vital issue in the case. It is urged

in this court as a question of law by appellant, on the theory that there is no competent evidence fairly tending to prove such waiver.   It will only be necessary for us to determine whether or not this position is sustained by the record, because if there is such evidence the judgment of the Appellate Court must be accepted as final.

We gather from the evidence that the policy was issued at the office of Joseph H. Strong, in Chicago, he being the manager for the defendant company for the States of Illinois and Wisconsin.   It was taken at the solicitation of one John F. Short, a friend of Ross, who was then in Strong's office.   Short afterwards went to St. Paul, Minnesota, and became manager for the company there.   He was entitled to a commission on the premium due February 17, 1889, on this policy.   On the 22d or 23d of January, 1889, Strong sent to Ross two notices of the maturity of the February payment.   The first is called the agent's notice, in the following form:

"The United States Life Ins. Co. in the City of New York. Agency Office No .....

..............................189..

"*To the holder of policy No......*

"The premium of $...... on said policy will be due at noon the....day of.........., 189...., if said policy be in force on that day, and may be paid to the undersigned only upon the company's receipt, which has been forwarded to this office.   The company allows ten days' grace for the payment of this premium.   If not paid either to the company at its office in New York City or to the undersigned at his office in..........before the expiration of said ten days' grace, the insurance thereupon ceases.                     ................, *Agent.*"

Stamped across the face of this form of agent's notice appears the following:   "Branch Offices U. S. Life Ins. Co., 26 Montauk Block, Chicago, Ill.—J. H. Strong, Gen'l Manager."   The other notice is the form required by the laws of New York from the home office, as follows:

"135,106.

The United States Life Ins. Co. in the City of New York.

261, 262, 263 Broadway, New York.

"Take notice that the half annual premium of $54.45, on policy No. 56,797, on the life of Robert J. Ross, will be due on 17th of 'February, 1889, if said policy be in force on that day, and that if not paid, the policy and all payments thereon will become forfeited and void. Such premium may be paid on or before that day, or within ten days thereafter, (ten days' grace being hereby allowed,) at this office, by check, draft or post-office order, to the order of the company, or, if more convenient for the insured, it may be so paid in cash to an authorized agent only upon the company's receipt to be given by him in exchange therefor, signed by the president, secretary, assistant secretary or actuary.     C. P. FRALEIGH,

"Read notice on other side.          *Secretary.*"

On the back is a notice to policyholders that agents are not authorized to make, alter or discharge contracts or waive forfeitures, stating how premiums may be paid, notice of maturity thereof, etc.

On January 31, 1889, Ross addressed this letter to J. F. Short at St. Paul:

"*J. F. Short, Esq., St. Paul, Minn.:*

"FRIEND SHORT—My life insurance premium with Strong is due on the 17th of February. How much grace do I have on this? Is it ten or thirty days? I will be in St. Paul about the middle of next month. Send me one of those printed slips explaining fully the limits on days of grace, by return mail, and oblige.

"Yours truly,          ROSS."

To this letter Short replied on February 1, 1889:

"*R. J. Ross, Esq., Chicago:*

"FRIEND ROSS—Yours of the 31st received and noted. You have thirty days' grace. I inclose you a slip explaining same.   *   *   *     Yours truly,   J. F. SHORT."

The enclosed slip was as follows:

"*Days of Grace.*—It has always been a chronic complaint against life insurance that the contract required that the premiums must be paid on the day named therein or the policy would lapse and be voided.   In the contracts issued by most life insurance companies this is still a compulsory condition.   Its effect has often proved to be a great hardship to policyholders who, through thoughtlessness or carelessness, have neglected to pay 'as designated in the bond.'   In liberal contrast, the United States Life Insurance Company has sought to obviate largely the effects of this condition by allowing a *month's grace* in the payment of premiums on *tontine* policies, and a grace of *ten days* in the payment of premiums on *all other* policies. During the period of grace the policy is kept in full force, premiums are accepted without regard to the health of the insured, and should death take place the full amount of the insurance will be paid, less the overdue premiums. What could be fairer or more generous than a concession like this, whereby a life insurance company seeks to protect the interests of a man's family against his own forgetfulness, or even his inability, to fulfill his contract and pay the premium on the designated day?   Next only in importance to the absolute indisputability of every policy issued by the United States Life, after it has been in force three years, is the promise of *ten days*' grace in the payment of premiums, and, taken together, they go further than any other concessions in the business of life insurance to give certainty to the calculations and investments of the man who wants to secure a sure protection for his loved ones."

Strong testified that he and Ross had a conversation on February 13, 1889, on the subject of the payment of the premium due on the 17th.   His testimony is somewhat confused by attempting to explain the transactions between the company and Ross on another policy in no way connected with this suit.   It is, however, to the effect

that to accommodate Ross he had taken his note for the
previous payments of premium and had advanced the
money to the company, and in the conversation on the
13th Ross said to him that he was in fact unable to pay
the premium at that time coming due on this policy.
"I said to Mr. Ross, as near as I can repeat my conversa-
tion from memory, that he had always had all the favors
he had asked for, and I would be very glad to accommo-
date him.

Q. "Who?

A. "I.

Q. "What did you say about the insurance company, if
anything?

A. "I said to Mr. Ross I had on other occasions accom-
modated him by taking his note and by paying the pre-
mium, and if he desired me to I would do so again for
thirty or sixty days.   If he would call in and give a note
I would do it for him again.   I told him he had until the
28th of February.   My report had then to be sent in for
the month.   I left Mr. Ross there, and that was the last
time I ever saw him.

Q. "Was anything said by you at that time about the
days of grace he had on the policy?

A. "I think there was not, but he knew, as a matter of
fact, that it was due on the 27th of February.

Q. "You mean the 17th of February with ten days of
grace added?

A. "Yes, sir.

Q. "Did he tell you at that time he was going out of
the city?

A. "Yes, sir, I think he did.

Q. "What did he say?

A. "I think he said he was going out of the city and
would be back before these days of grace were out.   I
think he was going to St. Paul.   Now my recollections
are it was either Friday or Saturday.   He was going to
leave Sunday night.   I know on the 27th I wrote him a

letter requesting him to call in at once. I guess that letter is not in evidence.

Q. "State whether or not anything was said by Ross as to his coming into your office before the end of the month.

A. "He said he would come in if he concluded to give the note.

Q. "Before the end of the month?

A. "Before the days of grace were up.

Q. "Before the 27th?

A. "I don't think the words days of grace were used, but he understood it. He pulled out the notice from the envelope in his pocket, and that brought up the conversation."

It was also shown by the company that notices by the agent, Strong, and from the home office, similar to those sent as to the February payment, had been sent Ross, notifying him of the maturity of previous installments ; also, that on the back of receipts given by him to the company for these payments was a notice to the effect that all premiums were payable at the company's office or to agents having proper receipts, etc., and stating : "The agreement is mutual (see application and policy) that unless the premium is paid on or before the day it becomes due, or within the ten days' grace allowed, the policy is forfeited and void, except as may be provided for in the policy."

That the condition of the payment of the premium when due, on penalty of forfeiture of the contract of insurance, being for the benefit of the company, was one which it could waive, is too well settled to be made the subject of argument or the citation of authorities. It is equally well settled that it may estop itself to set up that condition in defense of a suit on the policy, by a course of conduct or by declarations which have induced the assured to act to his injury. "If the practice of the company and its course of dealing with the insured, and

others known to the insured, have been such as to induce a belief that so much of the contract as provides for the forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief."   May on Insurance, 434.

*Home Life Ins. Co.* v. *Pierce*, 75 Ill. 426, was an action on a policy containing a condition (not unlike the one in this policy) of forfeiture for non-payment of the premium, and the company there set up a breach of the condition in avoidance of the contract.  In passing upon the validity of the defense we said (p. 430): "The general agent, in his correspondence with the policyholders, used paper upon which was printed his card, a prominent feature of which was the following: 'Every policy is non-forfeiting.' The deceased had in his possession several letters written by the general agent of the company, containing the above inscription in prominent letters.   It is a matter of but little importance what was really meant by insurance men by the use of such language.   When the advertisement was sent broadcast over the country, its effect upon policyholders could be none other than to inspire confidence that forfeitures would not be insisted upon by the company."

On the same reasoning we entertain no doubt that the slip introduced in evidence by the plaintiff below was competent evidence; it being substantially, if not expressly, conceded that it was issued and put in circulation by the company.   What Short said in his letter or wrote on the slip is of no consequence.   The manner in which the slip or circular came to the notice of the insured is important only as tending to show that he relied and acted upon it.   We are of the opinion that the Appellate Court properly held that he was justified in understanding that his was a tontine policy, and therefore entitled to thirty days' grace.   To say that a "limited tontine policy" or "special tontine policy" is not, in common ac-

ceptation, a "tontine policy," is, we think, entirely too technical to merit the approval of courts. To justify an insurance company in circulating among its patrons statements like those contained in this slip, distinguishing itself from other companies by its liberality in extending time in which to make payments of premium without risk of forfeiture, and at the same time permit it to avail itself of the forfeiture clause in its policies whenever payments are not promptly made, would, in effect, be to allow it to practice a fraud upon those who had a right to confide in its statements. We entertain no doubt that the circular or slip was properly admitted in evidence, and that it did tend to prove an extension of thirty days in which payments of premium, according to the terms of the policy, might be made.

It may also be seriously doubted whether an insurance company should be permitted to insist upon a forfeiture of its contract of insurance where the evidence shows that it has not stood by that clause, but made a departure therefrom, even though the time to which payment is extended be definitely fixed and not strictly complied with by the assured. Forfeitures, being odious to courts, are never enforced except where they are definitely contracted for and nothing done by the party for whose benefit they are made to mislead the other to his injury; and we think that whenever it is admitted that the waiver is only conditional, the clearest and most satisfactory proof should be required of the party making the waiver, showing that the condition was clearly and definitely understood by the insured; otherwise the waiver should be held general, and estop the company from afterward setting it up, except upon notice of forfeiture before the loss occurs. The reason of the rule holding that a waiver of such conditions may be made by the company, either by declarations or course of conduct, is, that the insured, by those declarations and conduct, is led to believe that by the indulgence of the company his policy will not be

forfeited, even though prompt payment, according to the strict requirement of the contract, is not made. Therefore, where the acts and declarations relied upon as a waiver are accompanied by a positive, unequivocal statement of a condition, it would seem that the waiver must be treated as only a conditional one,—that is to say, when this company stated to the assured that he would be indulged to the extent of allowing him ten or thirty days' grace in which to pay his premium, he could only avail himself of the waiver by complying with the terms and conditions upon which it was made, and could not be allowed to disregard it and at the same time insist upon the benefit of the extension. Therefore the ten days' grace extended by the company, as shown by its notices and receipts, are of no avail to this plaintiff, because payments were not made within such ten days, nor did the loss occur within that time. On the other hand, if there was a waiver for thirty days and the loss occurred within that time, the company would be estopped to avail itself of the defense here insisted upon. The merits of this case are thus shown to depend upon the single issue of fact, did the defendant's declarations and acts tend to lead Ross to understand and believe that he was entitled to only ten instead of thirty days' grace?

From what has already been said as to the competency and effect of the slip offered in evidence, it must be apparent that we regard the evidence upon this issue as in irreconcilable conflict, and if the jury had been properly instructed as to the law of the case, the finding of the jury and the affirmance of the judgment by the Appellate Court would have necessarily sustained plaintiff's contention. Objection is, however, urged to several instructions given on behalf of the plaintiff, and one of these we regard as so clearly erroneous and misleading as to require a reversal of the judgment below. The third is :

"The jury are instructed, as a matter of law, that the default in the payment of the premium on the day due by the terms of the policy does not, of itself, forfeit the policy. Whether in any given case an insurance company has or has not exercised its option is a fact provable by written or parol testimony, notwithstanding the declarations in the policy to the contrary. And in the case at bar, if the jury believe, from all the evidence, written and parol, that the defendant company did not forfeit the policy in suit prior to the death of said Robert J. Ross, then the jury must find for the plaintiff."

The condition in the policy is, that upon a failure to pay the premium when due the contract shall become null and void and of no effect,—not, as seems to be contemplated by this instruction, that the failure to pay should authorize the company to declare a forfeiture. Here, the question for the jury being whether or not there had been a waiver of the condition, if they found that fact against the plaintiff she could not recover, because by the terms of the contract it was void. Thus we said in *Schimp* v. *Cedar Rapids Ins. Co.* 124 Ill. 354: "The policy being a valid obligation and binding contract between the parties, upon its delivery to the assured the risk attached and commenced running, and would have continued to run until the loss occurred but for the breach of its conditions by the assured, which rendered it void at the election of the company, and it is not claimed that there was any waiver of such breach until after the commencement of the present suit. The insurer is not required, in such case, to formally declare a forfeiture. It is sufficient to set it up by way of defense when sued for the loss, as was done in this case." Many other authorities to the same effect might be cited. Under the last clause of this instruction, although the jury may have believed, from the evidence, that there was no waiver of the condition in the policy, yet, unless they also believed, from all the evidence, that the defendant company had forfeited the policy prior to

the death of the insured, they were bound to find for the plaintiff. There is no pretense that the policy was so forfeited, nor is it claimed by the company that it was, therefore this instruction amounted to a positive direction to find for the plaintiff.

Some objection is made to other instructions, but we do not deem it necessary to extend this opinion by noticing the criticisms made upon them.

For the manifest error in the third instruction the judgments of the Appellate and Superior Courts must be reversed and the cause remanded to the latter court for another trial.

*Reversed and remanded.*