## Ætna Life Insurance Co. v. James T. Bradway, Adm.

1. LIFE INSURANCE—*Payment of Delinquent Premiums After the Death of the Insured.*—Efforts to reinstate. a policy of life insurance after it had lapsed and after the death of the insured, is, under the circumstances of this case, held to be an attempt to defraud the company.

Assumpsit, on a policy of insurance. Appeal from the Circuit Court of Crawford County; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the February term, 1900. Reversed. Opinion filed September 8, 1900.

WOOD & OAKLEY, attorneys for appellant.

MAXWELL & JONES, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

On April 16, 1896, appellant issued, through its general

agents, R. W. Kempshall & Co., of Peoria, Illinois, to Samuel U. Burner, a local agent of the company at Robinson, Crawford county, Illinois, its policy of life insurance for the sum of $1,000, payable as a death claim, in consideration that he pay to it $16.65 on the 16th days of April and October of each year thereafter respectively, as semi-annual premiums.

The payment of the first semi-annual premium, which was due on April 16th, was made and accepted by the company.

He was unable to meet the premium due October 16th and asked an extension of time, as shown in the following letter:

"Robinson, Ill., Oct. 9th, 1896.

R. W. Kempshall & Co.

Gentlemen: Owing to the conditions of financial matters I am a little in doubt as to my ability to meet payment of premium on policy No. 243,024 on Oct. 16th, and unless I can get an extension of 30 days' time shall have to let it drop. Please advise me if it is possible to do this.

Yours,

S. U. Burner."

To which was the following reply:

"Peoria, Ill., October 12, 1896.

Mr. Samuel U. Burner, Robinson, Ill.

Dear Sir: Your letter of October 9th is received, with reference to your premium under policy No. 243,024, $16.65 due October 16th. In view of what you write, we would say that without thereby establishing a precedent for the payment of future premiums, we will take your note in extension of time for the premium, due in thirty days. Note for your signature is enclosed herewith, with interest added.

This is an especial adjustment, therefore please refer to the date of this letter when writing.

Yours truly,

R. W. Kempshall & Co."

The enclosed note contained a clause as follows:

"This note being given to extend time of payment of renewal premium on policy No. 243,024 in said company, it is understood and agreed that if not paid when due there will be no further extension, and that said policy will then

cease and determine, and be treated in all respects as if this conditional note and extension had not been given."

The note was signed by the insured and sent to Kempshall & Co.

On November 16, 1896, insured wrote to one R. A. Roseberry, an agent of appellant at Peoria, as follows:

"ROBINSON, ILL., Nov. 16th, 1896.
R. A. ROSEBERRY, Peoria, Ill.

DEAR SIR: Enclosed find notices regarding premium on my policy. I am very sorry to have to drop this policy but I find it impossible to meet this and other obligations which I have to at present time. It is not necessary for me to say anything about hard times for we all have that kind. Had I known when I took the policy that conditions would have been as they have been, I would not have taken it. I expect to pay the balance of the first year's premium as soon as I can, so that you will lose nothing. I am very sorry that the conditions are as they are, but I am compelled to do this from an inability to realize funds to meet it.
SAM. U. BURNER."

On November 23d, seven days after the renewal note became due, appellant wrote insured concerning same as follows:

"November 23, 1896.
MR. SAMUEL U. BURNER, Robinson, Ill.

DEAR SIR: Your letter of Nov. 16th to our Mr. Roseberry has been referred to us for reply. We should be very sorry indeed, to see you allow your valuable policy to go by default. Could you not arrange to make a small partial payment now? If so, we will try to get the company to give you further time on the remainder.

Awaiting your reply, we are
Yours truly,
R. W. KEMPSHALL & Co.
Managers."

On November 26th the insured replied to the above letter of appellant as follows:

"ROBINSON, ILL., Nov. 26th, 1896.
R. W. KEMPSHALL & Co., Peoria, Ill.

GENTLEMEN: In reply to the enclosed letter will say that at the time I asked for an extension of time I had every reason to believe that I would be able to meet the

obligation, but I found that I could not. I told Mr. Rose-berry that I expected to pay the premium note as soon as I could do so; that he would lose nothing. I do not like to lose the policy and for fear of another failure, I do not want to promise anything. I shall pay the premium as soon as possible so as to keep good my promise to Mr. Roseberry that he should lose nothing. I am very sorry matters are in such shape that I am compelled to do this, but I can not promise anything before spring.

Yours,

S. U. BURNER."

On November 28th, two days later, appellant replied as follows:

"November 28, 1896.

MR. S. U. BURNER, Robinson, Ill.

DEAR SIR: We have your letter of November 26th, with further reference to your policy No. 243,024. What partial payment could you make now and what further extension would you require, in order to make payment of the remainder? If there is any way we can accommodate you under the rules of the company, we will be glad to do so.

R. W. KEMPSHALL & Co.

Managers."

This letter of November 28th, of appellant to the insured, was not replied to by him. On December 11, 1896, appellant again wrote him as follows:

"December 11th, 1896.

MR. SAMUEL U. BURNER, Robinson, Ill.

DEAR SIR: We regret to be obliged to return to you herewith, unpaid, your note given by you in extension of time for the premium under policy No. 243,024. In consequence of non-payment of the same, your policy has lapsed. This policy, however, can be revived and your insurance reinstated, under the rules of the company, if applied for at once. Your interests require that you give the matter your immediate attention.

Yours truly,

R. W. KEMPSHALL & Co.

Managers."

On the 14th of December, 1896, Burner was taken ill and called at the office of a physician, Dr. T. N. Rafferty, and consulted him. He did the same on the 15th, 16th, 17th, and the forenoon of the 18th. On the afternoon of

the 18th, the doctor was called to Burner's house and found him in convulsions, suffering from an acute attack of Bright's disease. The doctor considered him to be in a dangerous condition and so informed his wife. He states : " I know I told her and everybody else that the matter was very serious." On the 25th of December, Burner died. On December 19, 1896, John C. Maxwell, an attorney in whose office the insured had desk room, by his personal check procured a draft for the overdue premium and sent it to Kempshall & Co. with the following letter which he dictated and mailed :

"ROBINSON, ILL., 12, 19, 1896.
Messrs. R. W. KEMPSHALL & Co., Peoria, Ill.
GENTLEMEN : Enclosed find draft on New York number 3672 for $16.65, semi-annual payment on policy number 243,024. I trust that this will be satisfactory and you will pardon the delay in sending the same.
Yours truly,
S. U. BURNER."

Maxwell was a witness for appellee. In his examination in chief, he testifies that he procured the draft at the solicitation of Mrs. Burner. In cross-examination, he says the draft was obtained either at the request of Mr. Burner or his wife. " I am not sure I had any conversation with Mr. Burner." (Abstract, p. 9.)

Two days later, on December 21, 1896, appellant replied to the letter, as follows :

"Your favor recent date received, and the matter has been referred to the company. You may expect to be advised in due course of mail.
R. W. KEMPSHALL & Co.,
Managers."

The money covered by the draft was forwarded by Kempshall & Co. to appellant at its home office in New York, but the company refused to renew the policy without a compliance with its rules, which, after a lapse of sixty days in payment of premium, require a re-examination.

Notice of refusal was sent by the company to Kempshall & Co., and by them forwarded, as per following letter, to the insured.

"December 28th, 1896.

Inasmuch as your remittance of $16.75, under the policy No. 243,024, was not made until Dec. 19th, and your note for premium under the policy was due on Nov. 16th, and not being paid, your policy lapsed on that date, we can not, under the instructions of the company, accept payment, and therefore enclose to you herewith our check for $16.75, covering the remittance made by you.

Yours truly,

R. W. Kempshall & Co.,

Managers."

The evidence shows that the refusal to accept the draft was made and mailed before appellant knew of the death of the insured, the first knowledge of his death being a letter from appellee, as administrator, dated December 29th. In this letter the check of Kempshall & Co. for $16.65, being the amount of the draft sent by Maxwell December 19th, was returned to Kempshall & Co. with the statement, "I do not regard his policy of $1,000 in your company as having lapsed or become forfeited, and hence the check is no part of his estate, but properly belongs to the Ætna Insurance Company."

The correspondence states the history of the case. It shows that the insured failed to pay his note, due November 16th, which extended the time of payment of the semi-annual premium, due October 16th; that Kempshall & Co. called attention to the failure and suggested that if there was any way in which "we can accommodate you, under the rules of the company, we shall be glad to do so."

To this letter the insured made no reply.

After waiting until December 11th, and having received no reply, appellant, through Kempshall & Co., returned the unpaid note, due November 16th, and notified the insured that his policy had lapsed, but further notified him that the policy could be revived and the insurance reinstated, under the rules of the company, if applied for at once. No notice of this letter was taken until after the 19th of December, the day after the insured had taken to his bed with convulsions, the doctor informing his wife of his serious and dangerous condition, from which illness he died in six days.

It is in evidence that the rules of the company, after a default of sixty days in payment of a premium, and a consequent lapse of policy, required a re-examination of the insured before the insurance could be reinstated. There was nothing unfair in this rule. It is apparent that, in this case, a reinstatement of the insurance could not have been had upon a re-examination. The evidence shows that from the afternoon of December 18th he was conscious only at times, and was rapidly nearing his end. The attempt to reinstate the insurance, under the circumstances, was an attempt to defraud the company.

After December 11th, the date of the return of the note, with the notification that the policy had lapsed, there was no contract of insurance between the parties. This comes clearly under the conditions laid down in U. S. Ins. Co. v. Ross, 159 Ill. 476.

The only condition upon which it could be reinstated was not complied with. Having failed to avail himself of the only way in which his insurance could be reinstated, Burner died without any contract of insurance with the company.

Under these facts of the case there can be no recovery. Judgment reversed.

**Finding of Facts.**—The following ultimate fact is found by the court and will be entered of record : The policy of insurance upon which this action was based lapsed before the death of the insured, and was not reinstated before such death.