## Mary Lang, Appellee, v. North American Union, Appellant.

### Gen. No. 6,993.

1. FRATERNAL BENEFIT SOCIETIES—*waiver of by-law requirement for reinstatement of suspended member*. The provision of a by-law of a fraternal beneficiary association automatically suspending a member for nonpayment of dues and making his good health a prerequisite to reinstatement is waived as to a delinquent member, who had been reinstated on many occasions prior to the adoption of such by-law by mere payment of back dues within the time specified without any certificate of good health and who followed the same procedure on the delinquency in question, although he was then mortally ill, where the association sent him notices of his delinquency specifying the method of reinstatement which were misleading in that no requirements as to good health were stated therein and which method was followed exactly by him.

2. FRATERNAL BENEFIT SOCIETIES—*waiver of by-law conclusively presumed to be known to member*. The conclusive presumption that a member of a fraternal benefit association knows its by-laws yields to a waiver by the association of compliance with such by-law by conduct and notices of the association to the member misleading him into the belief that the provisions of the by-law will not be enforced.

3.  FRATERNAL BENEFIT SOCIETIES—*when direction of verdict proper in action for death benefits.* The trial court properly directed a verdict for plaintiff and refused to direct a verdict for defendant in assumpsit to recover the amount of a beneficiary certificate on the life of a member who, under a by-law of the association, was suspended at the time of his death for nonpayment of dues and could not be reinstated because he was then mortally ill, where, although the evidence of his delinquency, suspension, illness and death is undisputed, the evidence showing waiver by the association of such by-law by its conduct, acts and declarations is not in conflict and is such that reasonable minds could not differ as to plaintiff's right to recover on the ground of waiver.

4.  FRATERNAL BENEFIT SOCIETIES—*sufficiency of evidence to support recovery on benefit certificate.* A directed verdict against a fraternal benefit association for the amount of a death benefit certificate is not contrary to the evidence where the facts of the member's illness and death are undisputed and the only disputed issue of fact is whether the association waived a by-law making the good health of the member a prerequisite to his reinstatement after suspension for nonpayment of dues, and the evidence of such waiver by the conduct, acts and declarations of the association is such that reasonable minds could reach no other conclusion than that of waiver.

5.  EVIDENCE—*when copy of original notice is admissible.* A copy of an original notice sent by a fraternal benefit association to a delinquent member is admissible in evidence to prove waiver of by-law provisions relative to reinstatement where it appears that the notices were printed in copies by the supreme council of the association, that one of the printed notices was sent the delinquent member by the secretary of his local council after his delinquency, that such member had received a notice after his delinquency like the copy in evidence, that a search had been made for it through all his papers and effects but it could not be found and that the copy was in all respects similar to those printed by the association to be sent to delinquent members.

Appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed August 5, 1922. Rehearing denied October 3, 1922.

DANIEL S. WENTWORTH, DAVID B. MALONEY and FRANK J. BURNS, for appellant.

LUTHER B. BRATTON and HENRY F. RUEL, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Mary Lang, began an action of assumpsit in the circuit court of Kankakee county against appellant, North American Union, a fraternal beneficiary society, organized under the laws of this State, to recover under a beneficiary certificate upon the life of her husband, Theodore K. Lang. The cause was heard by a jury but at the close of the evidence the court directed a verdict for the appellee for $2,107. Judgment was rendered upon the verdict and this appeal was prosecuted.

On May 30, 1896, Theodore K. Lang became a member of Englewood Council of the North American Union, and a beneficiary certificate for $2,000 was issued to him payable to his mother, which certificate was subsequently made payable to his wife, the appellee. The certificate provided that the insured should comply with all of the laws, rules and regulations then governing the appellant, or which might thereafter be enacted, which rules were made a part of the contract of insurance. At that time, the by-laws provided that the dues and assessments of each member should be due and payable on the first day of each month and the member should have the whole of the said month within which to pay the dues. In case the member failed to pay his dues by the end of the month, he became suspended, whereupon he could, during the next month, become reinstated by paying his dues and assessments. On January 1, 1919, the by-laws were amended and article IV, sec. 3, as amended, provided that a combined monthly contribution should be due and payable without notice from each beneficial member on the first day of each calendar month, and if not paid on or before the last day of the calendar month the member should stand suspended *ipso facto,* without any action by the local council, or the order, or any officer or member thereof, and all rights of the

member so suspended should cease until such member was subsequently reinstated as provided in the by-laws of the order.

Article IX, sec. 2 (1) as amended, provided that: "Any member of the order suspended for nonpayment of combined monthly contributions and dues may become reinstated by paying within ten days from date of such suspension, to the collector of his or her council, the combined monthly contribution and dues on which he or she was suspended, whereupon he or she shall become reinstated as a member, and be restored to all the privileges of the order, and the benefit certificate shall again be in force and effect."

Article IX, section 5a as amended, provided that: "Whenever assessments or dues are paid by or for a member in default, said member shall, by such payment, be held to warrant that he or she is in good health and not engaged in any prohibited occupation, and to contract that such assessments or dues, when so paid, shall be received and retained without waiving any of the provisions of the laws, rules and regulations of this society, until such reasonable time for actual action thereon shall have lapsed after the executive committee of the supreme council shall have had knowledge that the member was not in good health, or was engaged in a prohibited occupation when the payment was made, provided, however, that the receipt and the retention of such payment, in case such member was not in good health or was engaged in any prohibited occupation, shall not entitle him or her, or his or her beneficiary or beneficiaries, to any right under his or her benefit certificate, other than a refund of the mortuary premiums paid, together with interest thereon at the rate of four per cent per annum, after written demand therefor upon the executive committee of the supreme council, and provided, further, that the acceptance of such payment, either before or after death, shall not constitute a waiver on the part of the society. The retention by the society of any assessments or dues paid, either before or after the death of any member, or of any assessment or dues paid subsequently thereto, shall not consti-

tute a waiver of any of the provisions of the laws, rules and regulations of the society. And it is further provided that this provision shall in no way be considered to limit, qualify or waive the requirement for the filing of the certificate of good health as required in Law IX but is solely an additional warranty thereto.''

The evidence shows that for about fifteen years prior to his death Lang had been in the habit of paying two months' assessments and dues between the first and the tenth of each second month. In other words, he had not been paying his dues monthly, but had been paying them every other month, at which time he paid for the month in arrears and in advance for the current month. There were about 600 members of the Englewood Council and each month the local collector advised the appellant as to the number of members suspended and the number of members reinstated. The remittance of dues and assessments from Englewood Council to appellant was in a lump sum for the total membership, and it did not specify the names of the members who had paid their dues and assessments. The dues and assessments due from Lang for November, 1919, were due and payable on the first day of that month but he had all of the month during which to make the payment without being suspended. Lang, at that time, was living in Kankakee, Illinois, while the local collector of Englewood Council lived in Chicago. Lang failed to pay the November assessment during the month of November, and Mrs. Lang, the appellee, mailed a check for the November dues and assessments to the local collector of Englewood Council on December 8, 1919, and received a receipt for the same. On December 3, 1919, Lang was taken ill with a cold and chills. He remained at home on December 4 and 5 and his physician was called who found him in bed and diagnosed his case as influenza. On December 12, 1919, pneumonia developed, and on December 15, 1919, he died. Proofs

of death were furnished to the appellant by the appellee which showed all of these facts with reference to the sickness. The appellant rejected the claim on the ground that Lang became suspended on December 1, 1919, and that at the time of the payment of his dues and assessments he was sick and was not in good health and was therefore not reinstated under the amended by-laws. Suit was brought by the appellee and the appellant defended on the grounds as above set forth.

To the declaration appellant filed the general issue and two special pleas setting up the by-laws of the order and the time and condition of payment by Lang, and alleged that he was not in good health at the time payment was made on December 8, 1919, and was therefore not reinstated by such payment. At the close of the evidence on behalf of the appellee, and again at the close of all the evidence, the appellant made a motion to direct a verdict in favor of the appellant, which motions were overruled. A motion was then made by the appellee to direct a verdict in her favor, which motion was allowed, and the court instructed the jury to return a verdict for $2,107, and a verdict was returned for that amount and judgment was entered thereon.

The first ground of reversal urged is that Lang became automatically suspended on December 1, 1919, and the payment of his dues on December 8, 1919, failed to reinstate him to membership in the order for the reason that at the time the dues were paid he was not in good health. It is also urged that Lang, being a member of a fraternal beneficiary society, was conclusively presumed to know the provisions of its by-laws and was bound by them, and that the receipt of dues from him under the by-laws did not reinstate him.

There can be very little dispute as to the law applicable to the facts in this case. It is a well-known rule

of law that forfeitures of this kind are not favored by
the courts, and will not be enforced against equity and
good conscience. *Rockford Ins. Co. v. Storig,* 137 Ill.
646; *United States Life Ins. Co. v. Ross,* 159 Ill. 476;
*King v. Radeke,* 175 Ill. 72. Beneficiary certificates of
this kind are construed most strongly against the in-
surer, *Zeman v. North American Union,* 263 Ill. 304,
and they are governed by the same rules relative to
life insurance policies. *Martin v. Stubbings,* 126 Ill.
387; *Rockhold v. Canton Masonic Mut. Ben. Society,*
129 Ill. 440; *Peterson v. Manhattan Life Ins. Co.,* 244
Ill. 329. As a member of appellant society, Lang was
conclusively presumed to know of the by-laws relative
to the payment of dues and assessments and was
bound thereby unless they were waived. *Quinn v.
North American Union,* 162 Ill. App. 319; *O'Brien v.
Rittman,* 176 Ill. App. 237; *Benes v. Supreme Lodge
Knights and Ladies of Honor,* 231 Ill. 134. The sub-
ordinate lodge or council of a fraternal benefit society
is the agent of the supreme lodge or council, and such
subordinate lodge or council may waive a forfeiture of
a benefit certificate for a failure to pay dues as pro-
vided in the by-laws. *Jones v. Supreme Lodge
Knights of Honor,* 236 Ill. 113; *Love v. Modern Wood-
men of America,* 259 Ill. 102. Even though the by-
laws provide that the subordinate council or its officers
cannot waive the provisions of a by-law, even the by-
law itself, which provides against such waiver, may
be waived. *Dromgold v. Royal Neighbors of America,*
261 Ill. 60. When a beneficiary association has by its
course of conduct, acts and declaration, or by any
language in its certificate of membership, misled the
insured in regard to the payments, or created a belief
on his part that payment on the days specified will not
be exacted, and the insured in consequence fails to
pay on time, the association will be held to have
waived the requirement of the by-laws and will be
estopped from setting up the failure to pay as a cause

of forfeiture. *Illinois Life Ass'n v. Wells*, 200 Ill. 445; *Jones v. Supreme Lodge Knights of Honor*, 236 Ill. 113. In *United States Life Ins. Co. v. Ross*, 159 Ill. 476, a circular slip was issued by the company stating that certain days of grace would be allowed on all policies, and it was held that proof of that fact was admissible in evidence for the purpose of showing a waiver as against a forfeiture of the policy for nonpayment of the premium at the time specified.

Appellant contends that each time Lang failed to pay he was suspended and was so notified, and that he was repeatedly warned that he was not complying with the by-laws; but the fact remains that he was reinstated each time he was suspended. Appellant also contends that each time Lang was reinstated prior to December 1, 1919, he was in good health, and for that reason no question could be raised as to the validity of such reinstatement, but that after January 1, 1919, if he had not been in good health, the reinstatement would not have been valid as was the case when he was suspended on December 1, 1919. That would undoubtedly be true under the facts in evidence unless the provision of the by-laws as amended governing suspensions and reinstatements had been waived by appellant, or something had been done by them to induce Lang to believe that the provisions of that by-law would not be insisted upon by appellant or its agents.

The undisputed evidence shows that appellee's exhibit 4, which was a card received by Lang from appellant showing his payment of dues immediately prior to and up to the time of his death, contained the following printed notice thereon:

"The new law regarding suspension takes effect from January 1, 1919. Your assessment is due on the first day of the month and must be paid on or before the last day of the month or you are suspended and your insurance is not in force until you reinstate. To

reinstate, pay one assessment within ten days or two assessments by the end of the month. During the following month pay three assessments, a twenty-five cent fine and file a health certificate. Your money must be in the collector's hands by the last day of the month; mailing your remittance on the last day of the month will not be sufficient. Pay early in the month and avoid suspension. T. K. Lang, 861 Main Street, Kankakee, Illinois.''

Appellee's exhibit 19, offered in evidence, was a notice to suspended members sent out by authority of appellant, and contained the following:

''Dear Sir and Brother:

You failed to pay your last month's assessment and have consequently suspended yourself from the benefits of your membership in the North American Union, which has compelled me to forward your name to the supreme secretary as delinquent. Your attention is respectfully called to Law IX, sub-section 1, of section 2, and sub-sections 1 and 2 of section 5, Constitution and Laws.''

Then followed *in hæc verba* article IX, sec. 2 (1), above set forth, relative to reinstatement within ten days after the member had been suspended. Exhibit 19 then proceeded to tell the suspended member how to reinstate after ten days and within one month of his suspension, and how to reinstate after one month and within two months of his suspension. In order to reinstate after ten days and within one month of his suspension the notice set out section 5 (1) which provided that he should pay to the collector of his council the amount of the combined monthly contribution and dues upon which he was suspended, together with the amount due on the combined monthly contributions and dues for the current month and any special assessment due and unpaid by him. In order to reinstate after one month and within two months of the suspension, the notice recited section 5 (2) which provided that the member should ''make application for reinstatement upon a blank provided under

direction of the supreme council; said blank shall contain a certificate of health, and shall be accompanied by the amount of the combined monthly contributions, dues and assessments due and unpaid by him or her, together with a fee of twenty-five cents. The application, together with the certificate of health, and the fee of twenty-five cents, shall be forwarded to the supreme secretary, who shall submit said application and certificate of health to the supreme medical examiner. If the supreme medical examiner, and the supreme president, or supreme secretary, shall approve the application for reinstatement, notice of said approval shall be forwarded to the applicant and to the secretary and collector of the subordinate council to which application is made, and the reinstatement shall be in full force and effect from and after the date of such approval."

The notice as to the manner of reinstatement within ten days, and after ten days and within one month, as contained in exhibit 19, made no mention of good health, or a certificate of good health, as a condition precedent to the reinstatement, as provided in article IX, sec. 5a. As Lang was reinstated within ten days, he did not come within the provisions of the notice relative to reinstatement after ten days and within one month, or after one month and within two months. While the by-law which went into effect January 1, 1919, required the reinstated member to be in good health, and under the law Lang was conclusively presumed to know the provisions of that by-law, still the appellant or its agents had the right to waive this provision if they saw fit. When appellant took upon itself the burden of notifying Lang how he might be reinstated, by sending him exhibits 4 and 19, it was its duty to notify him of the entire law and not mislead him into thinking that mere payment of dues within ten days reinstated him. When these exhibits were sent to him he had a right to believe that appel-

lant or its agents intended to waive the provision with reference to good health as contained in article IX, sec. 5a. The mere fact that the conditions of reinstatement after one month and not exceeding two months, as recited in exhibit 19, were based upon a certificate of good health would naturally lead Lang to believe that good health was not a condition precedent under the ten-day reinstatement provision. Lang was reinstated in the exact manner provided in exhibits 4 and 19. Under these exhibits the manner of reinstatement after January 1, 1919, was the same as it had been prior to that date, and there was no change in his method of paying his dues and assessments. By sending to Lang exhibits 4 and 19 and omitting any reference to good health, appellant by its conduct, acts and declarations misled Lang in regard to his right to be reinstated, and created a belief in his mind that strict compliance with the letter of the by-law would not be exacted, and, under the authorities cited, such conduct constituted a waiver of the by-law on the part of the appellant and it is now estopped from setting up the provisions of the by-law as a cause of forfeiture.

Appellant next complains that the court improperly refused to direct a verdict for appellant, and improperly directed a verdict for appellee, and that the verdict is contrary to the evidence. The rule is that where there is no conflict in the evidence and it is of such a character that without weighing it or passing upon the credibility of the witnesses, no two reasonable minds, acting within the limits prescribed by the rules of law, could differ as to the plaintiff's right to recover, then the trial court may properly direct a verdict in favor of the plaintiff, otherwise the trial court should refuse so to direct a verdict. *Anthony Wheeler*, 130 Ill. 128; *Angus v. Chicago Trust & Savings Bank*, 170 Ill. 298; *Marshall v. John Grosse Clothing Co.*, 184 Ill. 421; *In re Reed's Estate*, 166 Ill.

App. 341; *Manhattan Co. v. Eversz*, 180 Ill. App. 470.

Not only is it true in this case that there is very little dispute as to the law applicable to the facts, but it is equally true that there is practically no controversy about the facts. Only three witnesses were called by appellant, none of whom testifies to any material facts in conflict with the evidence offered by appellee. While the by-laws were changed January 1, 1919, there was no change in Lang's method of paying dues. It may be true that a copy of the new by-laws was sent to him, but it is also true that exhibits 4 and 19, or similar notices, were probably sent to him for several months before his death and after January 1, 1919, and these two exhibits informed him how he could be reinstated and nothing was said in either of them about good health being a condition precedent to reinstatement within ten days after suspension. There is no dispute about Lang's method of paying his dues, or appellant's method of reinstating him, or when he was taken sick, how long he was sick, the date or cause of his death, or that he was not in good health at the time his last payment of dues was made. Appellee admits all of these facts and relies on the doctrine of waiver. There is no more conflict in the evidence on the doctrine of waiver than there is on the question of suspension and good health. It has been repeatedly held in the cases cited in this opinion that the supreme council, or the subordinate council, may waive the provisions of the by-laws with reference to the payment of dues. The facts which constitute a waiver are well understood in the law. The oral evidence of such waiver in this case is not in conflict. The documentary evidence of such waiver consisted of exhibits 4 and 19, neither of which is ambiguous, and their meaning and construction were for the court to determine. Reasonable minds, considering the undisputed evidence in this case, both oral and documentary, under the authorities in this State, would come to but one

conclusion, namely, that appellant by its conduct, acts and declarations misled Lang in regard to his right to be reinstated and created a belief in his mind that strict compliance with the letter of the by-laws would not be exacted, and such conduct constituted a waiver of the by-laws on the part of the appellant. Under these facts and the law applicable thereto, the court properly directed a verdict for the appellee, and properly denied appellant's motion to direct a verdict for the appellant, and for the same reason the verdict is not contrary to the evidence.

It is insisted by appellant that exhibit 19 was improperly admitted in evidence because it is only a copy of the notice sent to Lang, and the loss or destruction of the original of exhibit 19 was not established; also because there is no proof that it was ever received or read by Lang. Frank W. Andrews, who was the collector of Englewood Council in 1919, testified that whenever a member was suspended for nonpayment of dues within the time specified in the by-laws, he sent a copy of exhibit 19 to such member, generally before the fourth day of the next month, and that he sent a copy of this notice to Lang on the third or fourth of December, 1919; that these notices came from the supreme council. He testified that he had never read this particular exhibit word for word, but that it was like the notices received from the supreme council and sent out by him. Appellee testified that she had searched the papers and effects of Lang, had tried to find all cards, receipts and papers relative to the case, and that she could not find the original of exhibit 19; that she at one time saw a notice she thought was just like exhibit 19, but she could not recollect exactly what was in it; that she thought she had read the notice; that she was positive that Lang, at times, received a notice like exhibit 19. We think this evidence was a sufficient basis for the admission of exhibit 19. It is apparent that these notices were

printed in quantitiés by the supreme council. It was not necessary that this particular printed copy should have been read in order to entitle exhibit 19 to be admitted in evidence. All that was necessary was proof that it was one of the forms of notice which had been printed by authority of appellant and sent to Lang. The loss of the original was established by proper evidence so as to warrant the admission of the copy. No error was committed in admitting exhibit 19.

We find no reversible error, and the judgment will be affirmed.

*Judgment affirmed.*