THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

*v.*

KATE M. ALLEN.

*Opinion filed October 24, 1904.*

1. INSURANCE—*when beneficiary has a vested right in policy.* One named as beneficiary in an insurance policy which has been delivered into her possession has a vested right in the fund provided to be paid, unless power to divest her right is reserved to the assured by a provision of the policy.

2. SAME—*measure of damages in action for conversion of policy.* In an action by the beneficiary in a life insurance policy against the insurance company for an alleged conversion of the policy, the measure of damages is the face value of the policy, in the absence of evidence that its collectible value is less, with legal interest from the date of the conversion.

3. SAME—*when statements in the application are unimportant.* Statements in the application for a life insurance policy with reference to the right of the assured to control the fund are unimportant, where the application does not provide that it shall become a

part of the policy and there is no proof that the policy incorporated the application as a part thereof.

4. SAME—*when default in payment of premium note does not work forfeiture.* Default in payment, at maturity, of a premium note made payable to the agent of the company in pursuance of a custom in force between the company and its agents, does not work a forfeiture of the policy, in the absence of any provision in the policy that it shall be void in that event.

5. PARTIES—*when action is properly brought in name of beneficiary in policy.* An action against a life insurance company for conversion of a policy is properly brought in the name of the beneficiary, for the use of the person holding an instrument purporting to assign the policy as security for attorney's fees, where the title to the policy and the right of action were in the beneficiary at the time of the conversion.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

WINSTON, PAYNE & STRAWN, PAGE, WEAD & HUNTER, JULIAN T. DAVIES, and EDWARD L. SHORT, for appellant.

ARTHUR KEITHLEY, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The judgment entered in the circuit court of Peoria county in favor of the appellee and against the appellant company and one Joseph Clark in the sum of $20,658.01, was affirmed by the Appellate Court for the Second District on appeal, and the cause has been brought into this court by the further appeal of the appellant company.

The declaration was in trover, with a count in case. The first count alleged, in substance, that the appellant company, on the first day of October, 1901, issued its policy insuring the life of one Joseph H. Allen, husband of the appellee, in the sum of $20,000, payable to the appellee upon the death of said Joseph H. Allen, and that the appellee had such policy in her possession on the first day of February, 1902, and

that it was then of the value of $20,000; that said policy was casually lost out of her possession and came into the hands of the defendants by finding, and that the defendants converted and disposed of the policy to their own use and benefit; that said Joseph H. Allen died on or about the 27th day of May, 1902, and that the plaintiff thereupon became entitled to have and receive from the defendants the value of said policy at the time of its conversion, etc. The second count alleged the execution and delivery of the policy to the husband of the plaintiff and the delivery of the same by her husband to her, and that subsequently she, the plaintiff, borrowed from the defendant Joseph Clark, who was then and there an agent of the appellant company, the sum of $10, and at the request of said Clark delivered to him the said policy of insurance, to be held by him as security for the said loan; that the appellant company and the said Clark, with the fraudulent purpose of defrauding the plaintiff out of the said policy, conspired together and procured the said policy to be returned to the appellant company, and it has since retained the same, though the said sum of $10, with legal interest thereon, has been tendered to said Clark and said policy demanded of him and also of the said insurance company. The count also alleged the death of said Allen; that the appellee was beneficiary under the policy; that the policy was of the value of $25,000, etc. It is permissible to join counts in trover and in case in the same declaration. *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626.

The defense that certain of the statements made by the said Joseph H. Allen in the application for the policy, with respect to the condition of his health and of his habits, were false, and the further defense that the first premium on the policy was not paid during the continuance in good health of the assured, constituted questions of fact which were submitted to the jury for decision.

The trial court did not err in refusing to direct a peremptory verdict in favor of the defendants below on the ground

that there was no evidence tending to overcome that produced in behalf of the defendants below in support of these defenses that false and fraudulent material statements were made by the assured in the application and that no premium whatever had been paid to the company on the policy. There was abundant evidence to show that appellant's co-defendant, Clark, was its agent. He solicited the insurance, forwarded the application therefor, received the policy from the company and delivered it to the assured. He accepted from the assured four notes signed by the assured, payable to him at different times for different amounts, the aggregate of the notes being the total premium for the first year. These notes were payable to Clark and were by him discounted. He was entitled to seventy or seventy-five per cent of the amount of the notes for his commission. There was evidence tending to show the company recognized the custom of its agents to take notes of the assured for the first annual premium, payable to the agent, and that the company in such cases would look to the agent to pay its percentage of the total premium in thirty or sixty days. Clark sold the notes given by Allen but did not pay the company the twenty-five or thirty per cent of the proceeds which it was entitled to receive. The assured did not pay the notes, three of which fell due before his death. When the suit was brought, all of the notes were in the hands of assignees of Clark. Under this state of case the court could not say, as matter of law, that the company might insist, as against the policyholder, that there had been no payment of the premium on the policy.

Whether, as the appellant company insisted, the policy was voluntarily surrendered to Clark, as the agent of the company, for cancellation because of the failure to pay two of the notes which the assured had given to Clark and which had fallen due, or whether the policy was deposited by the appellee with Clark as security for a loan of money, as she contended, could not be declared, as a matter of law, from two letters produced in evidence,—the first a letter from

Clark to Mr. Allen, possibly in response to a letter written by the appellee, and the second her reply thereto,—for the reason it appears from the face of these letters that they do not disclose in full the negotiation between the parties with reference to this matter. The letters relied upon to constitute the contract to surrender the policy do not appear, upon inspection, to purport to be an entire contract, or that they were written with intent to express the whole agreement, or any agreement, between the parties, and when read in the light of attendant facts and circumstances it is apparent they were not intended to set forth all of the agreement. If this were not so, it could not be determined from the particular two letters that the policy did not come into the possession of Clark as mere security for money. The letter written by Mrs. Allen distinctly says that she is to, and will, return the money to Clark as soon as she can possibly do so. The notes which Allen had given to Clark for the premium on the policy had been sold by Allen and were outstanding at the time of the writing of these letters, and the company had not then directed Clark to have the policy taken up, but, so far as the record shows, was still content to look to Clark for the small proportion of the premium that it was to receive. It was highly improbable that Clark would demand or expect that the policy would be surrendered while he or his assignees were still holding the notes of the assured, and incredible that the appellee and her husband would consent to surrender the policy and not receive the notes which had been given for the premiums thereon. Whether the policy was surrendered to Clark to be canceled or as a pledge to secure the re-payment of the money loaned by Clark to appellee could not be determined as a matter of law, but was for the decision of the jury.

Clark testified that the assured promised at different times to surrender the policy. But it was not shown that the assured had the power to cancel the policy. The appellee was named as beneficiary in the policy and had possession of the

instrument. She had a vested right in the fund provided to be paid by the policy, unless power to divest that right was expressly reserved to the assured by a provision of the policy. (3 Am. & Eng. Ency. of Law,—2d ed.—980; *Glanz* v. *Gloeckler,* 104 Ill. 573.) The policy was not produced in evidence, nor was it proven to confer upon the assured authority to assign the policy or divest the rights of the beneficiary. The application, which was produced in evidence, did not provide it should become a part of the policy, nor was it shown that any provision of the policy incorporated the application as a part thereof. Therefore any statement made in the application as to the right of the assured to control the fund is unimportant, as the right of the beneficiary is to be determined from the provisions of the policy. The policy was traced to the possession of the appellant company and was not produced in evidence. Hence the trial court properly ruled, in passing upon the motion to direct a peremptory verdict, and in giving and refusing instructions, that the assured, the husband, had no power to agree to or promise to surrender the policy for cancellation.

The observations heretofore made as to the interest of the appellee in the policy disposes of the suggestion that the action could not be maintained for the want of proof that plaintiff had either a general or special interest in the policy. The true measure of damages was the face value of the policy, there being no evidence that its collectible value was less. *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626.

Interest at the legal rate from the date of the conversion was properly allowed, according to the universal rule.

The title to the policy and right of action thereon were in Mrs. Allen, the appellee, at the time of the conversion of the policy, and the action was therefore properly brought in her name. Arthur Keithley was named as beneficial plaintiff, for the reason that he held an instrument in writing, signed by Mrs. Allen, purporting to assign the policy, or the benefit thereof, to him as security for money advanced by him to her

and for his fees as attorney for her. Mrs. Allen had only a right of action. It was not negotiable. The interest of Keithley was equitable, only, and the suit therefore properly proceeded in her name, with that of Keithley as usee.

During the course of the trial the appellant company asked the court to discharge one of the jurors, George C. Joseph, on account of alleged improper relations between the juror and said Keithley. In support of this application it was represented to the court that a minor daughter of said Keithley, the beneficial plaintiff and also the attorney for the plaintiff, negligently drove a buggy upon and against one Thomas H. Tamplin, the father-in-law of the said juror Joseph, and injured him; that Tamplin had no property and was cared for by the said Joseph; that Keithley had attempted to negotiate with Joseph and his wife for a settlement of the claim for damages occasioned by the injury to Tamplin; that Keithley had at various times sent checks to the wife of Joseph to be used in caring for Tamplin; that the question of damages was pending and undetermined, and that Joseph relied upon the good will of Keithley to secure a satisfactory settlement. It was otherwise disclosed to the court that the daughter of Keithley, when Tamplin was injured, was not engaged in the affairs of her father, nor did he know that she was riding in the buggy, and did not in any manner authorize or direct her to do so; that he had voluntarily contributed money to Mrs. Joseph to pay for a nurse for her father; that Mrs. Joseph had charge of the house and kept boarders; that there had never been any discussion or mention of a claim of damages in any way; that he had never been asked by any of them to pay anything, and that he had never discussed the matter at any time with Joseph. No right of action existed against Keithley for the acts of the minor daughter, so far as the case was disclosed to the court. Any right of action which existed would be in favor of Tamplin and against the daughter, and neither Joseph nor Keithley would have any legal interest in the re-

sult of the action. It is not insisted that Joseph on his *voir dire* made any evasive or misleading answers, nor that he did not fully and clearly answer all questions that were put to him. The juror was accepted and duly sworn, and no more appeared than that it might be feared he would be more favorably inclined to the cause of the plaintiff than that of the defendants. This could have been discovered by the appellant company before the juror was accepted, for, as before said, the juror frankly and fully answered all questions that were asked him. Such question must be committed in the greater degree to the discretion of the trial court, and we do not feel that it can be said the action taken by the court in this instance prejudiced the cause of appellant company or was an abuse of the discretionary authority of the court.

During the trial one Whittaker, one of the jurors, became ill, and the court, on being advised, ordered an adjournment of the court until the hour of two o'clock in the afternoon. At that hour the appellant company entered a motion to discharge the jury and continue the cause on account of the illness of the juror. The court, without deciding the motion, adjourned the trial until the following morning, at which time the court interrogated the juror and decided that his health would permit him to sit in the case and that he was mentally capable of discharging his duties as a juror. We have consulted the statements of the juror made in answer to the questions asked him by the court, as preserved in the record, and agree with the view held by the court that the juror was mentally and physically competent to perform the duties of a juror.

We have examined the various alleged errors of the court in ruling as to the admissibility of testimony and find no error reversible in character. It could not have prejudicially affected the appellant company to permit the appellee, over the objection of the company, to answer the question how long Clark had been agent of the appellant company, for the reason that the witness answered that she did not know. It

may be that the question assumed that Clark was or had been an agent of the appellant company. The proof upon that question had placed the fact that he was agent of the company so far beyond all controversy that it could not be seriously urged that such an assumption would justify a reversal of the judgment.

The financial condition of the assured, Joseph H. Allen, was immaterial, and the many different offers of the appellant company to introduce proof on that point were properly overruled.

It was also proper to refuse to allow certain questions to be propounded to the physician who, as medical examiner for the company, examined the assured. The only reason urged in the brief in support of the admissibility of answers to the questions is, that they were proper as tending to show the possibility of collusion between the assured and the medical examiner. We think they were too remote to establish a mere possibility, even if mere possibilities were competent to establish a defense.

The question desired to be propounded by the appellant company to its secretary, Easton, viz., "State whether or not, since the 24th of February, 1902, there has been in existence any policy or contract of insurance by the Mutual Life Insurance Company of New York upon the life of Joseph H. Allen, formerly of Peoria and Elmwood, Illinois?" did not, as the appellant company insists, call upon the witness to state the action taken by the company in the way of a formal cancellation of the policy, but more plainly called for the opinion of the witness on the question whether the policy had been surrendered or its validity destroyed in any way. It was properly refused.

The complaint is groundless that the court refused to permit the appellant company, on cross-examination of the witness Owen, after having brought out that he was manager for a co-operative building company, to ask him what were the purpose and object of such co-operative company.

It would unreasonably extend this opinion to state and discuss a number of other complaints as to the rulings of the court on questions of the admissibility of evidence. It must suffice to say we have considered them and find no error reversible in character.

Instruction No. 1 given at the request of the appellee correctly advised the jury that the burden was on the appellant company to show that false answers were made to questions contained in the application for the insurance. It is conceded the instruction stated the correct principle of law, but the contention is that in drafting the instruction the word "answers" was used in the plural, and therefore charged the jury that it was incumbent on the appellant company to prove that all of the answers in the application, or at least two of such answers, were false. This is an unreasonable and unwarranted view of the meaning that would ordinarily be given the instruction.

Instruction No. 3 advised the jury as to the legal effect of knowledge on the part of the agent of a life insurance company as to the habits and health of an applicant for insurance and as to the extent to which the insurance company would be bound by such knowledge. There is no ground for the criticism that the instruction might have been taken by the jury to have reference to the knowledge which Clark acquired after the making of the application for insurance.

Instruction No. 5 given for appellee advised the jury as to the legal effect of the acceptance by Clark of the notes of Allen in payment of the premium for one year, and the criticism upon it is, that the "contract of insurance" provided that the insurance should not take effect until the first premium should be paid. The policy, though traced to the hands of the appellant company, was not produced in evidence. The "contract of insurance" referred to by counsel is the application for the policy, and the meaning of the particular clause therein which they insist renders this instruction improper is, that liability of the company shall not attach until

the policy shall have been issued and signed by the company, and there is nothing therein which forbids payment of the premiums by notes payable to the agent, in pursuance of the custom in force between the company and its agents. In the absence of proof of a clause in the policy providing the policy shall be void in the event the premium is not paid at the maturity of a note or notes taken for the premium, default in the payment of the note will not work a forfeiture of the policy. 19 Am. & Eng. Ency. of Law, (2d ed.) 47, and notes; *United States Life Ins. Co.* v. *Ross,* 159 Ill. 476; May on Insurance, (2d ed.) sec. 87.

The objection to the seventh instruction is, that it ignores the fact that if, under appellee's contention, Clark held the policy for a loan, he had a right to retain the possession of the policy. Clark surrendered the policy to the company for cancellation, and the instruction advised the jury as to his right to do so if he held it as security only, and as to the legal effect of the cancellation if Clark held the policy as security, only, for a loan. Any reference to the right of Clark to have held the possession of the policy as security was manifestly unnecessary, as he did not so retain it but surrendered it to the company to be canceled.

Instruction No. 22 asked by appellant was properly refused. It asked the court to instruct the jury, as a matter of law, that the letters hereinbefore referred to, one written by Clark to Joseph H. Allen, and the other in reply thereto, written by the appellee to Clark, do not, in law, constitute an agreement on the part of Clark to loan money to the appellee and take the policy as security therefor. As we have before shown, these letters, within themselves, did not constitute the contract between the appellee and Clark. They were admissible in evidence as tending, together with other evidence, to establish the contract. The appellant contended the letters alone should be considered in ascertaining the contract between these parties, and that they established that the policy was surrendered to Clark and not deposited with him as se-

curity, but the court correctly refused to so interpret the letters or to hold that the letters alone must be resorted to as the only evidence of the contract. The instruction was therefore properly refused.

All that was proper to be given in appellant's instructions Nos. 24 and 25 was clearly and plainly made known to the jury by instructions 13, 17, and other given instructions.

The court properly refused to instruct the jury, as asked by appellant's instruction No. 26, refused, that there was no evidence showing any loan from the defendant Clark to the plaintiff upon the policy as security therefor, and instruction No. 27, refused, requesting the court to charge the jury that there was no evidence to show that Clark did not perform all of the conditions which it appeared from the evidence he was to perform as a condition of having the policy delivered to him. There was evidence tending to show the appellee did not give up the policy to Clark to be canceled, and that she received the money from him with the understanding, on her part at least, that she was to re-pay it. Clark did not return the notes of Allen when he got the policy. He did not have the notes then. They were in the possession of the person to whom he had transferred them, and remained in the possession of his assignee until after the institution of this suit by the appellee. He had not been notified by the company to take up the policy when he received it from the appellee. After receiving it from her he retained it in his possession some ten or twelve days and did not notify the company that he had it. The cashier of the company having learned that Clark had the policy, informed the company, and it ordered him to surrender the policy to it, and he did so. It was for the jury to determine, from all the facts and circumstances in proof, whether Clark received the policy as being surrendered for cancellation or as security for the money which appellee had received from him, and instructions Nos. 26 and 27, if given, would have invaded the province of the jury.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*