**Antonia Link, Appellee v. Mutual Life Insurance Company of New York, Appellant.**

**Gen. No. 7,297.**

1. INSURANCE—*incontestable period runs from actual date of policy issued later.* Under the statute fixing the date of a life insurance policy as the time from which the two-year incontestable period shall begin to run, a policy which, though actually issued on March 8, 1916, was dated February 18, 1916, and the premiums collected from that date, became incontestable two years from such date.

2. INSURANCE—*time in which to sue to cancel under incontestable clause.* Where the beneficiary under a life insurance policy is an individual instead of the estate of the insured person the interests of the beneficiary become vested upon the death of the insured and a suit could be commenced by the insurer to contest the policy for fraud and the running of the two-year period of the incontestable clause is not suspended until an executrix is appointed.

3. INSURANCE—*return of premiums not essential to sue to cancel for fraud.* Where the ground for canceling a life insurance policy was fraud, it was unnecessary that a tender of the paid premiums be made before beginning a suit for that purpose so that it was unnecessary to wait until an executrix was appointed before beginning a suit to cancel, and the two-year incontestable period would begin from the death of the insured.

4. INSURANCE—*effect of notice of cancellation of life policy with incontestable clause.* A notice by an insurer to the beneficiary

under a life insurance policy of its decision to cancel the policy for fraud, together with a tender of the premium, did not terminate its liability under the policy or satisfy the incontestable clause of the policy.

5. INSURANCE—*right under incontestable clause to defend in action policy.* Where a suit was begun by the beneficiary on a life insurance policy within the two-year period in which the insurer could contest the policy for fraud but the declaration and pleas were not filed until that period had expired, the insurer could not defend on that ground.

Appeal by defendant from the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed July 24, 1924. *Certiorari* denied by Supreme Court (making opinion final).

WINSTON, STRAWN & SHAW and DUNCAN & O'CONOR, for appellant; SILAS H. STRAWN, JOHN D. BLACK, VINCENT J. DUNCAN and JAMES H. CARTWRIGHT, JR., of counsel.

CHARLES W. HELMIG and BUTTERS, CLARK & BUTTERS, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Antonia Link, began suit in the circuit court of La Salle county against appellant, The Mutual Life Insurance Company of New York, upon a life insurance policy. A demurrer was sustained to the pleas, judgment was rendered in favor of appellee for $6,520, and an appeal was prosecuted to this court.

On February 18, 1916, Jacob L. Link applied to appellant for a policy of life insurance. In his application he alleged that the statements and answers contained therein were true and were offered as an inducement to issue the policy. In his answers to questions of the medical examiner he stated that his illness since childhood had been an attack of la grippe in January, 1916; that the only physician who had prescribed for him in the past five years

was Dr. Gallenseifer, of Peru, Illinois. Appellant claims these answers were false and fraudulent and the insured knew they were false; that the insured was then suffering from a diseased condition of the kidneys and prostate gland and of other organs of his body and had been so suffering for a number of years; that he had within five years received treatment from physicians for these diseases.

The policy was delivered March 8, 1916. When it was delivered Link made application for an additional policy of $5,000 being the policy in question on this appeal. In his application for the additional insurance he stated that the covenants, warranties, answers and agreements contained in his application of February 18, 1916, should be the basis for the additional insurance. On the same day, March 8, 1916, the policy for the additional insurance, upon which this suit is based, was issued and delivered to the insured, but it was dated February 18, 1916, the date the original application was made. The policy contained the following clause: "This policy shall be incontestable, except for non-payment of premiums, provided two years shall have elapsed from its date of issue."

The insured died on May 23, 1917, his last will and testament was admitted to probate June 21, 1917, and appellee, Antonia Link, his widow and the beneficiary under the policy, was appointed executrix. The appellant claims it had no knowledge that the statements made by the insured in his application were false until the latter part of September, 1917, and on September 25, 1917, it notified appellee that it had discovered the fraud, tendered to her the premiums together with interest thereon, demanded a return of the policy stating to appellee that it rescinded and terminated the same. The tender was refused and the policy was not delivered for cancellation.

On December 6, 1917, appellee commenced suit

against appellant in the circuit court of La Salle county to recover upon the policy. Appellant entered its appearance on December 22, 1917. Appellee filed her declaration on February 26, 1918, and on March 15, 1918, appellant filed its pleas, setting up the fraud as above stated. A deposition was taken under these pleadings both parties being represented. On May 22, 1918, the appellee dismissed the suit, and on May 28, 1918, commenced this suit. On June 10, 1918, appellant entered its appearance and on July 3, 1918, filed pleas which were in substance the same as those filed on March 15, 1918. The pleadings became extremely complicated and they were all withdrawn under order of the court. Appellant again filed pleas identical with those filed on July 3, 1918. These pleas were again withdrawn on July 14, 1923, and new pleas were filed by the appellant in which the same fraud was set up and in addition thereto matters of avoidance of the incontestable clause of the policy. To these pleas appellee filed a general and special demurrer setting up that the appellant's right to defend upon the ground of fraud was barred by reason of the incontestable clause of the policy and for the further reason that the suit was commenced more than two years after the date of the policy. The court sustained the demurrer holding that the incontestable clause of the policy was a bar to the defense set out in the pleas. The appellant elected to stand by its pleas and withdraw the general issue. Judgment was entered against appellant for $6,520, and this appeal followed.

The first question for determination is whether the two-year period within which the policy could be contested commenced to run on February 18, 1916, the date of the application which is also the date of policy, or from March 8, 1916, the date the policy was actually delivered. Appellant claims the latter date governs and appellee contends that the former is the

true date. Paragraph 3, sec. 375, ch. 73, Cahill's Ill. Stat. 1923, p. 2023, which governs the contest of policies of insurance, provides: "That the policy, together with the application therefor, a copy of which application shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties and shall be incontestable after * * * two years from its date except for non-payment of premiums," etc. The incontestable clause in the policy is as follows: "This policy shall be incontestable, except for non-payment of premiums, provided two years shall have elapsed from its date of issue." The application contains the following clause: "The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless, also, the policy shall have been delivered to and received by me during my continuance in good health." The first paragraph of the policy is as follows: "The Mutual Life Insurance Company of New York, in consideration of the annual premium of $289.75, the receipt of which is hereby acknowledged, and of the payment of a like amount upon each 18th day of February hereafter until the death of the insured," etc. The last paragraph is as follows: "In witness whereof, the company has caused this policy to be executed this 18th day of February, 1916."

The statute fixes the date of the policy as the time from which the two-year incontestable period shall begin to run. It does not begin to run "from the date of issue," as stated in the policy or from the date the policy is to take effect as provided in the application. The statute makes no exceptions with reference to the payment of the first premium, or the good health of the insured, or the delivery or acceptance of the policy, or conditions in the application. Appellant had the option to date this policy at any date it might see fit. It saw fit to date it on February 18,

1916, to make the premiums run from that date, and to make the future payments payable on each succeeding February 18. It is apparent from the first clause of the policy that the appellant collected premiums from February 18, 1916. Having voluntarily selected this date and collected premiums therefrom, appellant is not now in any position to say that another date should govern when the statute expressly makes the date of the policy the date from which the incontentable clause shall begin to run. For these reasons we hold that the incontestable clause began to run from February 18, 1916, instead of from March 8, 1916, as contended by appellant.

The insured died May 23, 1917, and the executrix was not appointed until June 21, 1917. Appellant contends that during these twenty-nine days the incontestable period ceased to run, and for this reason the pleas were filed and the policy was contested within the two-year period. In support of this position appellant cites *Ramsey v. Old Colony Life Ins. Co.*, 297 Ill. 592. In that case it was held that the contestable period on a policy of this kind ceased to run from the date of the death of the insured until an administrator was appointed, but the facts in that case were entirely different from those now before us. In that case the policy was payable to the estate of the insured and until an administrator was appointed the insurance company was powerless to begin suit to set aside the policy on the grounds of fraud for the reason that there was no person to be made defendant upon whom service could be obtained. The decision of the Supreme Court holding that this time should be deducted is based upon that fact. The policy now before us was payable to the appellee who was an individual. Immediately upon the death of the insured the interests of the appellee became vested (*Mutual Life Ins. Co. v. Allen*, 212 Ill. 134), and suit could have been commenced against her by appellant

to contest the policy on the ground of fraud. For that reason the rule laid down in the *Ramsey* case does not apply in this case.

Appellant contends that even though the policy was payable to appellee, a bill could not be filed to set aside the policy for the reason that the premium paid on the policy prior to the death of the insured belonged to the executrix and appellee would have to tender these premiums to the executrix before a bill could be filed and this could not be done until after the executrix was appointed and for this reason the twenty-nine days should be deducted. There is no merit in this contention. The grounds for canceling this policy were fraud. Where fraud is the basis of the suit a tender is not always necessary before suit is commenced. In May on Insurance, sec. 557, it is said: "If a policy be void *ab initio*, or if the risk never attaches, and there is no actual fraud on the part of the insured, and the contract is not against law or good morals, though there may have been misrepresentation or breach of warranty, he may recover back all the premiums he may have paid, either in an action for them alone, or on a count for money had and received, coupled with a count on the policy in an action for the loss." *In re Millers' & Manufacturers' Ins. Co.*, 97 Minn. 98, it was held that when a policy never attaches and no risk is assumed, the insured may recover back the premium unless he has been guilty of fraud, or the contract is illegal, or he is *in pari delicto*, but that the insurer is not obliged to return or offer to return the premiums which have been voluntarily paid before notice of the fact that the policy is not in force, as a condition precedent to availing itself of its defense to an action on the policy. Both of these authorities are cited with approval in *Seaback v. Metropolitan Life Ins. Co.*, 274 Ill. 516, and on page 522 it is said: "The insurance company may have a defense on the policy and against the payment of

the premiums, too; and it is against reason to hold that an insurance company must pay premiums it may owe one party, however just, in order that it may defend a claim or a suit by another or different party, and where it has done nothing to waive the defense or to estop it to defend against such claim or suit. The insured in this case, if any one, would have been entitled to the premiums paid by her if the policy had been declared void in her lifetime because of said conditions being broken, and on a declaration of appellee, after her death, that the policy was void for conditions broken, her administrator, and not the beneficiary or her administrator, was the proper party to demand and sue for such premiums not returned." In *Joseph v. New York Life Ins. Co.*, 308 Ill. 93, the policy was payable to a named beneficiary who instituted suit to collect the insurance. No administrator had been appointed for the estate of the insured, and the court decided the issues in that case without such administrator having been appointed. This is apparently the view taken by the appellant in this case for the reason that it filed pleas in this case and did not tender or offer to tender any premium as a condition precedent to the filing of the pleas. If it had a right to plead this fraud without making a tender and without an offer to make a tender, we see no reason why it would not have a right to file a bill in equity to set aside the policy on the ground of fraud without first tendering the back premiums. If no tender was necessary before a bill was filed to set aside the policy, then the twenty-nine days should not be deducted for the reason that at all times between the death of the insured and the appointment of the executor there was some person in existence capable of being sued by appellant, and the reason for the deduction of the time as held in the *Ramsey* case did not exist in this case.

On September 25, 1917, immediately after appellant

claims to have discovered the alleged fraud, it contends that it rescinded the policy, tendered to appellee the premiums paid, and by these acts terminated its liability and made a sufficient contest in law to satisfy the incontestable clause of the policy. In support of these propositions many cases are cited but we do not deem it necessary to review them for the reason that these questions have been determined by the courts of this State and these holdings are binding upon us regardless of what the courts of other jurisdictions may have determined. *Monahan v. Metropolitan Life Ins. Co.*, 283 Ill. 136, was a case quite similar to the one now before us, and in considering the manner in which the policy might be contested, the court, on page 141, said: "In case of a breach of warranty under this particular clause, the insurer must assert its claim within the two-year period, whether the insured survives that period or not, either by affirmative action or by defense to a suit brought on the policy by the beneficiary within two years." In *Ramsey v. Old Colony Life Ins. Co., supra,* in speaking of the right of an insurance company to contest a policy of insurance under a two-year incontestable clause, on page 598, the court said: "Such contest can be made *only* by proceedings in court to which the insurer and the insured, or his representatives or beneficiaries, are parties. *American Trust Co. v. Life Ins. Co. of Virginia,* 173 N. C. 558; *Mutual Life Ins. Co. v. Buford,* 61 Okla. 158." In each of these cases it was expressly held that equity had jurisdiction to terminate a policy under circumstances similar to those present in this case. Under these authorities the notice alleged to have been given by appellant to appellee of its decision to cancel the policy together with a tender of the premium did not terminate the liability under the policy and were not sufficient to satisfy the incontestable clause for the reason that the only way in which the policy could be

terminated was by a suit brought by the appellant to set aside the policy, or by a defense in a suit brought by the appellee to enforce the policy.

It is next insisted by appellant that the incontestable period ceased to run when suit was commenced on the policy by appellee on December 6, 1917, within the contestable period; that appellant by entering its appearance in that case and filing its pleas on March 15, 1918, contested the policy in such a way that it could always thereafter continue to contest; that appellee by dismissing the suit after the contested period had expired obtained no advantage over appellant but that its rights were secure and could afterwards be set up in this case.

When the suit was commenced, in December, 1917, no declaration was filed until February 26, 1918, which was eighteen days after the expiration of the two years from the date of the policy, provided no deduction should be made from that time. Until the time the declaration was filed, there was no method of determining the facts upon which this cause of action was based and it was not until the declaration was filed that the nature of the cause of action could be ascertained. Prior to March 15, 1918, no pleas of any kind or character had been filed by the appellant, no defense based upon fraud had been raised, and for that reason it cannot be held that any attempt had been made by the appellant to contest this policy. It was not until March 15 that any pleas were filed which attempted to contest the policy on the grounds of fraud but this was after the expiration of the two years provided in the policy. Appellant cites *Joseph v. New York Life Ins. Co.,* 308 Ill 93, as authority for its contention that even though it made a defective defense, it could afterwards amend its pleadings so as to state a good cause of action. Upon examination it will be found that in the *Joseph* case pleas were filed within the statutory period for contest setting

up certain facts defectively which would constitute a contest of the policy. While these pleas were defective the court held they constituted a sufficient foundation upon which good pleas could be filed and that the insurance company could maintain the defense. The difference between that case and the case at bar is that in the case at bar no pleas of any kind or character were ever filed or attempted to be filed until after the expiration of the two-year period provided by the statute within which the policy could be contested. Even if it be conceded that the date of the policy was March 8, 1916, instead of February 18, 1916, the pleas were not filed within two years from March 8, 1916.

We therefore conclude that none of these pleas filed by the appellant constitutes a defense to this policy, that the trial court properly sustained the demurrer to the pleas, properly entered judgment against the appellant, and for this reason the judgment will be affirmed.

*Judgment affirmed.*