### MISSOURI STATE LIFE INS. CO. v. LANGREDER.

#### No. 5960.

Circuit Court of Appeals, Seventh Circuit.

Jan. 22, 1937.

Rehearing Denied Feb. 11, 1937.

Bruce A. Campbell, of East St. Louis, Ill., and George D. Burroughs, of Edwardsville, Ill. (Allen May and J. R. Burcham, both of St. Louis, Mo., of counsel), for appellant.

Wilbur A. Trares, of Edwardsville, Ill., and Harry C. Moore, of Springfield, Ill., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

SPARKS, Circuit Judge.

By this action appellee recovered a judgment of $12,000 upon a life insurance policy issued to her husband on September 28, 1920. It was issued by the International Life Insurance Company, through its agent at Edwardsville, Illinois, and liability thereon was assumed by the Missouri State Life Insurance Company prior to the insured's death. Both companies were Missouri corporations. The action was instituted against the latter company in 1931, and that company was dissolved by a state court of Missouri in 1933.

Appellee was named in the policy as sole beneficiary, and in case of accidental death of the insured, she was to receive $10,000. It was admitted that the insured died as a result of an accident, on October 6, 1930.

Certain provisions of the policy, which give rise to this controversy, are set forth in the margin. [1]

Appellant's first plea was the general issue. Its amended second plea set forth the policy provisions relative to cash surrender, and averred that on March 31, 1925, the insured and appellee as benefici-

---

[1] "Premiums Advanced from Dividends and Loan Values.

"After three full annual premiums shall have been paid and if application for this privilege duly evidenced in writing shall have been furnished by the insured before default in the payment of any premium, if any premium shall not be paid at the expiration of the period of grace, the company will first apply any dividends, then payable and accumulated, to the payment of such premium and will charge the remainder of such premium, if any, against this policy as a loan in accordance with the provisions in the 'Cash Loans' clause of the policy, provided the then available loan value shall be sufficient to enable such advance, or if insufficient, the company will so charge an instalment of the premium for a shorter period, but not for less than one-quarter year, and interest on all indebtedness to the date on which the next instalment shall become due; if, at any time, however, the available loan value shall be less than the amount of any such advance required, then the amount of the available loan value shall be applied to the purchase of extended insurance in accordance with the 'Extended Insurance' provisions of the policy * * *

"Cash Loans.

"At any time after three full annual premiums have been paid, and while this policy is in force, the company will advance to the insured on the sole security of this policy as duly evidenced in writing, any sum desired; the total indebtedness to the company, including any advance thereon made, shall, however, not exceed that sum which with six per cent. interest shall equal the cash surrender value at the end of the then current insurance year. Interest on the loan shall be at the rate of six per cent. per annum, payable on each anniversary of this policy. All or any part of the sum advanced may be repaid at any time. Failure to repay such advance or to pay interest thereon shall not avoid the policy, but if the interest is not paid when due it shall be added to the indebtedness. * * *

"Surrender for Cash.

"After three annual premiums shall have been paid, the insured may, within six months after default in payment of premiums, but not later, surrender the policy and

"(a) Receive the cash surrender value less any indebtedness to the company thereon. * * *

"Rights of Insured.

"The insured, without the consent of the beneficiary, may receive every benefit, exercise every right, and enjoy every privilege conferred upon him by this policy.

"Grace.

"If any premium is not paid on or before the day it falls due the policy holder is in default; but a grace of one month (not less than 30 days) will be allowed for the payment of any premium after the first, during which time the insurance continues in force. If death occurs within

ary, in writing, assigned and transferred the policy, together with all benefit and advantage thereof, to the Bank of Edwardsville, of Edwardsville, Illinois; that contemporaneously therewith, the insured and beneficiary borrowed $300 from that bank, and executed a collateral agreement under which they deposited the policy as security for the note, and that when the insured died on October 6, 1930, the full amount of the note with interest was due; that prior to September 28, 1928, insured failed to make certain premium payments then due on the policy, and failed to make payment on notes theretofore given to appellant and its predecessor; that on January 19, 1928, insured gave his note to the International Company for $296.59, which subsequently became the property of appellant, and upon which there was due $335.65 at the time of insured's death, and that note provided that in case the policy were surrendered, the principal with interest should be deducted from any amount due under the policy; that insured did not pay the premiums due on September 28, in 1928 and 1929, and that under the automatic premium loan provision of the policy, those premiums were paid by charging them as a loan against the cash surrender value, and that thereby at the time of the surrender of the policy there was due the company the further sum of $376.-10, and in addition thereto the sum of $184.10 for the premium falling due September 28, 1930, but with the privilege of thirty days grace.

It was further alleged that on October 6, 1930, the gross surrender value of the policy, plus the annual cash dividend for 1930, was $955.75, and there was chargeable against it the first two items just referred to, leaving a cash surrender value of $244, which would be further depleted at the end of the grace period on October 28, 1930, by the annual premium for that year of $184.10, thus decreasing the cash surrender value far below the amount due the bank; that on September 30, 1930, the bank, as assignee, demanded the net cash surrender value of the policy, which it

delivered to appellant, and at the same time executed a written instrument whereby it surrendered the policy to appellant for its net cash surrender value, and it was cancelled by appellant prior to insured's death.

The amended third plea alleged the same facts and urged that appellee was thereby estopped from asserting that the policy was in force at the time of decedent's death.

The amended fourth plea was substantially the same as the amended second, except as to details of the surrender of the policy. It relied upon the assignment to the bank and its surrender of the policy prior to decedent's death.

The fifth plea was the only one, other than the general issue, to which the District Court did not sustain a general demurrer. In addition to allegations of the amended second plea, it alleged that the bank's surrender of the policy and its demand for, and its receipt of, the cash surrender value was with the knowledge and consent, and at the request of the insured and beneficiary.

The sixth plea upon substantially the same allegations as the second amended plea, contended that the insured and beneficiary had abandoned the policy and all intentions of redeeming it or of keeping it in force.

The seventh plea was precisely the same as the fifth except that it did not allege that appellee had knowledge of, or consented to, the bank's surrender of the policy.

To the fifth plea, appellee replied (1) that the policy was assigned to the bank only for the purpose of securing the payment of the indebtedness, (2) that the bank did not surrender the policy prior to the death of the insured with the knowledge and consent of insured and beneficiary, and (3) that appellant did not pay the net cash surrender value of the policy to the bank prior to the death of the insured. These were the only issues upon which the

the period of grace the unpaid premium for the then current insurance year will be deducted from the amount payable hereunder. * * *
"Change of Beneficiary.
"The insured at any time, and from time to time, may change the beneficiary, provided this policy is not then assigned * * *

"Assignments.
"Any assignment of this policy must be made in duplicate and one copy filed with the company at its Home Office. The Company assumes no responsibility to the validity of any assignment. Any claim made under an assignment shall be subject to proof of interest and extent thereof."

case was tried, and there was no dispute as to the material facts.

At the close of all the evidence each party moved the court for a directed verdict, and by agreement of the parties the jury was discharged, and the cause was submitted to the court on December 1, 1932. Immediately thereupon, the parties respectively moved the court for a finding in its and her favor. On June 30, 1934, the District Court made the following entry in its record, "Come now the parties to this cause by their respective attorneys and the court having heretofore heard the evidence herein and the arguments of counsel thereon, and now being fully advised in the premises finds the issues for the plaintiff."

On July 5, 1934, the District Court filed with the Clerk of that Court findings of fact and conclusions of law which appear in the margin. [2]

---

[2] The Court finds:

"(1) The Court has jurisdiction of the parties hereto and the subject matter hereof.

"(2) That in his lifetime William Louis Langreder, on September 28, 1920, applied for and received * * * (the policy in suit).

"(3) That the policy was issued by the International Life Insurance Company of St. Louis in payment of an annual premium of $148.10; that the policy was taken over and liability assumed by * * * (appellant) on August 28, 1928.

"(4) On March 21, 1925, the insured and the plaintiff, his beneficiary, by an instrument in writing, assigned and transferred to The Bank of Edwardsville, at Edwardsville, Illinois, the policy of insurance as collateral security for a loan from said bank in the sum of $300. The assignment did not contain any provision authorizing the assignee to surrender the said policy of insurance.

"(5) January 19, 1928, the insured gave his note for $296.59 to * * * (insurer) in payment of premium and took up a smaller note previously given. The said note became the property of * * * (appellant) by virtue of its reinsurance contract. All prior insurance premiums were paid in cash by the insured.

"(6) Premiums due on September 28, 1928, and September 28, 1929, were paid by the defendant insurance company under an automatic loan privilege contained in the policy and made a lien on said policy by reason of the authority in writing given to * * * (appellant) by the insured. An additional premium of $148.10 became due on the policy September 28, 1930, but with the privilege of thirty days grace in the payment thereof.

"(7) On or about the latter part of August, 1930, the assignee delivered the policy of insurance in person by its then president, George W. Meyer, to * * * (appellant) at the actuary's office in the City of St. Louis, Missouri, with the request that it be surrendered for its cash surrender value, but * * * (appellant) refused to surrender and cancel said policy and pay said cash surrender value. However,

the policy of insurance remained with the defendant insurance company. On September 28, 1930, the assignee executed a written release, releasing said defendant insurance company from all liability by reason of the payment of said cash surrender value to the assignee, and also executed, on the same day, an indemnifying bond, holding * * * (appellant) harmless in the payment of such cash surrender value to assignee. These two instruments were, on the date of their execution, forwarded to * * * (appellant) at its offices in St. Louis, Missouri.

"(8) Defendant made an entry upon its books several days later that the said policy was surrendered, but did not give any notice to the assignee or to the insured that it had taken such action.

"(9) October 6, 1930, at 6:30 P. M.; defendant deposited in the United States Mail, in the City of St. Louis, Missouri, its check for $244, in favor of the assignee in payment of the cash surrender value of the policy. This check did not reach the assignee until October 7, 1930, at 9 A. M.

"(10) The assignee delivered the policy of insurance to defendant and demanded the net cash surrender value thereof upon alleged verbal instructions given to the assignee about two and half years prior to the attempted surrender, by the insured, in which the insured said to George W. Meyer, then president of said assignee bank, 'That he could cash the policy in for its surrender value and pay his note to the bank, that he did not want the premiums to eat the policy up.'

"(11) At the time of the oral authorization to surrender, the cash surrender value was approximately $700, and the note which the insured had given the assignee bank was a little over $300.

"(12) The alleged surrender of said policy of insurance was attempted by said assignee bank without any notice to the insured or beneficiary that said policy would be surrendered by the assignee bank at the time and in the manner said alleged surrender was made.

"(13) The evidence fails to show the return of the insured's note by * * *

On July 20, 1934, appellee filed her motion for judgment in her favor on the findings of Judge FitzHenry. He died on November 18, 1935, without having passed on this motion. On November 14, 1935, appellee filed her motion for judgment nunc pro tunc as of some date prior to October 7, 1933. This motion was filed, and all subsequent proceedings were had, before Judge Briggle, who was a United States District Judge in the same district as Judge FitzHenry. That motion recited that on August 28, 1933, the appellant was adjudicated insolvent by the State Circuit Court of the City of St. Louis, and that all of the assets of appellant were vested in fee simple in R. Emmet O'Malley, as Superintendent of the Insurance Department of the State of Missouri, who on September 7, 1933, was authorized by that state court to enter a purchase agreement with the General American Life Insurance Company; that on October 7, 1933, upon petition of O'Malley, the Circuit Court of St. Louis had dissolved the corporate entity of appellant while this decision was held under advisement by Judge FitzHenry.

After a hearing on this motion for judgment nunc pro tunc, the court overruled it on December 13, 1935, and at the same time, upon the suggestion of appellant's prior dissolution, abated this action without prejudice to the parties. Subsequently, on December 23, 1935, the District Court, on motion of appellee, set aside the order of abatement, and on February 28, 1936, entered judgment for appellee upon the findings of fact and conclusions of law filed by Judge FitzHenry on July 5, 1934. The appeal is prosecuted in the name of appellant by O'Malley, as Superintendent of the Insurance Department of the State of Missouri, in charge of its affairs, and as Statutory Liquidator and Successor thereof.

Appellant first contends that the District Court erred in sustaining general demurrers to its amended second, third and fourth pleas, and to its sixth and seventh pleas. It urges that default existed at the time the policy was surrendered, because the premium was then due and unpaid, and that the bank, under the assignment and the terms of the policy, had a right to receive the cash surrender value when insured failed to pay the premium when due, notwithstanding the days of grace had not expired. In support of its contention, appellant relies upon Lipman v. Equitable Life Assurance Society of the United States (C.C.A.) 58 F.(2d) 15. There the insured, during the grace period, exercised her option to take the cash surrender value of her policy. The policy and insured's written request for surrender were received by the company on the same day and just before the insured's death. Her representative refused to accept the company's check for the cash surrender value, on the ground that the grace period had not expired and she had no right to surrender the policy until the expiration of the grace period, and that it was not in default until that time. In a suit on the policy, the court held that the rights of the parties became fixed when the insured exercised her option during the grace period, since there was a meeting of minds when the insured accepted the continuing offer evidenced by the option in the policy, and that further action by the company was unnecessary. These facts are not analogous to those presented to us. There the insured surrendered the policy with a written request for its surrender value; here the attempted surrender was made by the bank as assignee. Before appellant can

---

(appellant) upon the alleged surrender of said policy to either the assignee, the insured, or the beneficiary, the plaintiff herein.

"(14) On October 6, 1930, at 2:30 P. M., the insured was killed by a falling scaffold surrounding a steel tank at the refinery of the Standard Oil Company at Wood River, Illinois.

"The Court holds:

"(1) That the execution of the contract, its assumption by defendant, and delivery to the insured, are established.

"(2) An oral authority to the assignee of life insurance policy to surrender and get the cash surrender value is void unless acted upon within a reasonable time within which to act upon such authority.

"(3) Where a pledgee, who holds a life insurance policy as collateral security for a promissory note, desires to realize upon the collateral before disposing of the insurance policy he must make demand for the debt, or serve notice upon the pledgor of his intention to enforce a realization upon the collateral.

"(4) The plaintiff is entitled to recover from the defendant the sum of $10,000 with interest at 5% per annum from the date of the commencement of this suit.

"[Signed] Louis FitzHenry, J.

"Indorsed: Filed July 5, 1934. S. T. Burnett, Clerk."

bring itself within the purview of the Lipman Case it must show that the surrender of the policy by the assignee was authorized by the insured. To do so, it relies upon the assignment. That instrument was given as collateral security for a note executed by the insured and beneficiary contemporaneously therewith. The note was renewed more than once, and perhaps increased in amount, but the assignment was continuously held as collateral for the debt. The original note and the renewals each provided that the holder might sell any or all collateral at public or private sale for cash or on credit.

This record fairly discloses that the contract of insurance was made, and the death of insured occurred in Illinois. Those facts subjected the parties to the pertinent statutory provisions and the judicial pronouncements of that state with respect to the policy and its assignability. John Hancock Mutual Life Ins. Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. ——. Appellant urges that the written assignment conveyed the legal title of the policy to the assignee, and that it, as the holder of the legal title, could exercise any of the options contained in the policy when they became available. However, an insurance policy is not negotiable either by the common law or the statute of Illinois, so as to vest the legal title in the assignee. Mutual Life Ins. Co. v. Allen, 212 Ill. 134, 72 N.E. 200; Benes v. Bankers' Life Ins. Co., 282 Ill. 236, 118 N.E. 443; Hoffman v. New York Life Ins. Co., 230 Ill.App. 533. It is but a chose in action, and is governed by the same principles applicable to choses in action in general. It is assignable in equity only. United States Life Ins. Co. v. Ludwig, 103 Ill. 305. This being true, the assignee had no authority to surrender the policy without the consent of the insured. Weatherbee v. New York Life Ins. Co., 182 Mass. 342, 343, 65 N.E. 383; Manton v. Robinson (R.I.) 37 A. 8; Toplitz v. Bauer, 161 N.Y. 325, 55 N.E. 1059; Barrett v. Northwestern Mutual Life Ins. Co., 99 Iowa, 637, 68 N.W. 906. Hence, we think the court did not err in sustaining the demurrers to appellant's second, third and fourth amended pleas and to the sixth special plea. Other reasons are urged in support of this ruling, but we do not deem it necessary to discuss them.

We think the court erred in sustaining the demurrer to the seventh special plea which avers that the surrender was made with the knowledge and consent and at the request of the insured. However, all of appellant's evidence in support of these averments was admitted and considered, and the court made special findings of fact upon which it rendered its conclusions of law, and under those circumstances we think the error was not such as to warrant reversal. It is true that appellant contends that the court made no special findings or conclusions of law, which we do not concede. On the other hand appellee insists that appellant made no objections to the findings and saved no exceptions to the conclusions. On account of these opposing contentions we have devoted special attention to the demurrers. There was great delay in the progress of this case, and it is not surprising that there are a great many irregularities in the record. This was no doubt due in part to the illness and death of Judge FitzHenry. We have no doubt, as hereinafter stated, that the findings of fact and conclusions of law were properly filed and entered of record, but we are fearful lest appellant may not have had sufficient opportunity to enter its objections and exceptions thereto. For this reason we have treated all of its objections and exceptions which it now urges as if they were made at the proper time.

The same questions raised by the demurrers to the pleas were also presented on the merits. They are whether the acts of the bank with respect to the surrender of the policy were authorized; whether the acts of appellant were authorized with respect to the cancellation of the policy and the payment to the bank of the cash surrender value; and whether the acts of the insured and the beneficiary were sufficient to constitute an abandonment of the policy, or to estop them or their representatives from denying its surrender and cancellation.

For reasons heretofore stated, we are convinced that the assignment and transfer of the policy did not authorize the bank to surrender it. However, aside from the assignment and transfer, appellant contends that the insured, in May, 1928, orally authorized the bank to surrender the policy and receive the amount of its note with interest. That is true, and insured then stated that he wanted it done in order to keep the premiums from consuming the policy, which at that time had a cash surrender value of about $700. These facts would have been admissible under the seventh special plea, and they

were admitted in evidence. For some reason unsatisfactorily explained, the bank failed to exercise such authority until September 28, 1930, after the premiums had consumed all but $244 of the cash surrender value, and the insured's indebtedness, with interest, had increased to about $400. On that date the bank, as assignee, without the insured's knowledge, executed a written release together with a bond indemnifying appellant from loss by reason of the payment to the bank of the cash surrender value.

Several days later, appellant made an entry on its books to the effect that the policy was surrendered, but gave no notice of that fact either to the assignee or the insured. Subsequently, on October 6, 1930, a few hours after insured's death, appellant, not knowing of insured's death, mailed its check for $244 to the bank, and it was received by the bank the next morning. Under these circumstances, we think the bank failed to act upon the oral authority within a reasonable time and thereby waived any right it might have had to surrender the policy, without further authority from the insured. The mere fact that the pledgee was unable to find the assured in order to make a demand did not entitle it to dispose of the pledge without a demand. In that case, disposition should be authorized and sanctioned by judicial proceedings. Rozet v. McClellan, 48 Ill. 345, 95 Am.Dec. 551; Indiana & Ill. R. Co. v. McKernan, 24 Ind. 62; State National Bank v. Syndicate Co. of Eureka Springs (C.C.) 178 F. 359.

For the same reasons and others, we think appellant had no authority to cancel the policy and pay the cash surrender value to the bank. It is quite evident that it doubted its authority for so doing, because it required of the bank an indemnifying bond. The policy provided for the advancement of premiums by appellant from the dividends and loan values upon the insured's application in writing. That he had complied with this provision to the satisfaction of appellant is established by the fact that the premiums for 1928 and 1929 had thus been paid, and it was contemplated that the one for 1930 should be paid in the same manner by appellant at the expiration of the days of grace, and there was sufficient of the insured's money in appellant's hands to pay it. Under these circumstances, it cannot be said that the premium for 1930 was in

default to the extent of authorizing cancellation, or that there was any cash surrender value immediately available to the bank on its mere equitable title to the policy. Benes v. Bankers' Life Ins. Co., supra; United States Life Ins. Co. v. Ross, 159 Ill. 476, 42 N.E. 859; Protection Life Ins. Co. v. Palmer, 81 Ill. 88; Hanson v. Northwestern Mutual Life Ins. Co., 229 Ill.App. 15. Furthermore, appellant could not retain the premium note which it continued to hold, and at the same time take the benefit of a cancellation of the policy. Koehler v. Phœnix Mutual Life Ins. Co., 4 Ky.Law Rep. 903; Johnson v. Southern Mutual Life Ins. Co., 79 Ky. 403.

Appellant's contentions that assured was estopped by his conduct to deny surrender and cancellation of the policy, or that he had abandoned it, we think are without merit.

We are further convinced that the court did not err in setting aside the order of abatement which it had formerly entered because of appellant's dissolution by a state court. A suit against a corporation does not abate if there is a local policy expressed by statute or decision, that the corporation, although dissolved, shall continue for a given period for the purpose of winding up its affairs. Clark v. Willard, 292 U.S. 112, 54 S.Ct. 615, 78 L.Ed. 1160; Life Ass'n of America v. Fassett, 102 Ill. 315; In re Wolf Mfg. Industries (C.C.A.) 56 F.(2d) 64.

Appellant further contends that the special findings of fact and conclusions of law were not rightfully and legally filed and entered of record by Judge FitzHenry. The recitations of the record do not support this contention. That Judge Briggle had authority to enter a judgment upon them, we think there can be no doubt. 28 U.S.C.A. § 776; Life & Fire Ins. Co. of N. Y. v. Wilson, 8 Pet. 291, 8 L.Ed. 949; United States v. Meldrum (D.C.) 146 F. 390; Meldrum v. United States (C.C.A.) 151 F. 177, 10 Ann.Cas. 324.

We think the court erred in its conclusion as to the amount due on the policy. This was fixed at the full amount of the policy, with interest thereon from the date of the commencement of the suit. However, it appears from the record that there was due from the insured to the insurer on September 30, 1930, the date of the attempted surrender, the sum of $711.75, including loans and interest thereon. In addition, since we hold that the surrender

was ineffectual, there became due on September 28, 1930, the annual premium on the policy, amounting to $184.10 for which credit should be given to the insurer. Further, although the surrender was ineffectual, the payment of the $244 surrender value to the assignee reduced the amount of the indebtedness of the insured, to cover which the policy had been assigned by the insured and the beneficiary as collateral security. We therefore hold that appellant is entitled to a credit for this amount also. Judgment should therefore have been entered for $10,000, less $1,139.85, with interest at the rate of 5% per annum from the date of commencement of the suit. If within thirty days from this date, appellee shall have filed in this court her remittitur of all in excess of that amount, excepting costs, the judgment will be affirmed, otherwise it will be reversed. The costs of this appeal are adjudged against appellant, providing the remittitur is filed.